```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3   UNITED STATES OF AMERICA,

 4                    Plaintiff,

 5      vs.                              Case No. 05-81165

 6   KHAOPHONE SYCHANTHA,

 7                    Defendant.

 8   _____/

 9                       JURY TRIAL - VOLUME 5
                   BEFORE THE HONORABLE SEAN F. COX
10                   United States District Judge
             Theodore Levin United States Courthouse
11               231 West Lafayette Boulevard
                         Detroit, Michigan
12                 Thursday, October 17, 2024

13   APPEARANCES:

14   FOR THE PLAINTIFF:
                       JASON DORVAL NORWOOD
15                     THOMAS PATRICK MARTIN
                       United States Attorney's Office
16                     211 W. Fort Street
                       Suite 2001
17                     Detroit, Michigan 48226
                       313.226.9587
18                     313.226.9168

19   FOR THE DEFENDANT:
                       KHAOPHONE SYCHANTHA
20                     IN PRO PER
                       DAVID S. STEINGOLD
21                     (STANDBY COUNSEL)
                       Law Offices of David S. Steingold, PLLC
22                     30300 Northwestern Highway, Suite 111
                       Farmington Hills, Michigan 48334
23                     313.962.0000

24

25
```

2

 1  **APPEARANCES CONTINUED:**
                          **CRAIG A. DALY**
 2                       Craig A. Daly, PC
                         (On behalf of David Sok)
 3                       P.O. Box 720
                         Royal Oak, Michigan 48068
 4                       248.439.0132

 5  **ALSO PRESENT:**   Special Agent Brian Manns
                         Yannie Andrus - Government Assistant
 6                       Marissa Mandernach - Defense Assistant

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
                            -    -    -
24              To obtain a certified transcript, contact:
                   April A. Kurtz, CSR-7347, RPR, FCRR
25                        www.transcriptorders.com

# TABLE OF CONTENTS

MATTER                                                        PAGE

**Jury Trial - (Volume 5)............................. 3**


Hearing regarding David Sok......................... 7
Argument by Mr. Daly................................ 7
Questioning of Mr. Sok by the Court................ 10
Contempt of Court Ruling by the Court.............. 10
Questioning of Mr. Sok by Mr. Daly................. 11
Argument by Mr. Martin............................. 12
Argument by Mr. Daly............................... 12
Ruling of the Court................................ 13


Government rests................................... 14


**Defendant's Case-in-Chief**

WITNESS                                                      PAGE

**Special Agent Brian Manns**

Direct Examination by Defendant Sychantha.......... 22


Defense rests...................................... 26

Jury Instructions.................................. 26


Certificate of Reporter............................ 77

 1   Detroit, Michigan

 2   Thursday, October 17, 2024

 3   8:50 a.m.

 4                              *  *  *

 5            THE CLERK:  All rise.

 6            The United States District Court for the Eastern

 7   District of Michigan is now in session.  The Honorable Sean Cox

 8   presiding.

 9            You may be seated.

10            The Court calls the matter of United States of

11   America versus Khaophone Sychantha, Case Number 05-81165.

12            Counsel, please state your appearances for the

13   record.

14            MR. NORWOOD:  Good morning, your Honor.  Jason

15   Norwood on behalf of the United States.

16            MR. MARTIN:  And Patrick Martin on behalf of the

17   United States.

18            THE COURT:  Good morning.

19            DEFENDANT SYCHANTHA:  Good morning.  Khaophone

20   Sychantha, defendant.

21            THE COURT:  Good morning.

22            MR. STEINGOLD:  Good morning, your Honor.  David

23   Steingold, advisory counsel.

24            THE COURT:  All right.  Please have a seat.

25            Mr. Daly was here earlier, and he's meeting with

1    Mr. Sok right now on the issue whether Mr. Sok's going to

2    testify or not.  We'll find out shortly.

3             Oh, Mr. Daly is back.  Great.

4             And yesterday afternoon, as I understand, I received

5    the joint agreed upon jury instructions from the Government and

6    the defense, is that correct?

7             MR. STEINGOLD:  That's correct, your Honor.

8             THE COURT:  We met this morning, and it's my

9    understanding we're going to re-work the verdict form as to

10   Counts One and Three, is that correct?

11            MR. NORWOOD:  That is correct, your Honor.

12            DEFENDANT SYCHANTHA:  Yes, your Honor.

13            THE COURT:  Okay.  Let me know when the verdict form

14   has been finalized.

15            DEFENDANT SYCHANTHA:  Your Honor, can I put something

16   on the record?

17            THE COURT:  Just give me a sec.

18            DEFENDANT SYCHANTHA:  Okay.

19            THE COURT:  Okay.  Sir?

20            DEFENDANT SYCHANTHA:  Yes?

21            THE COURT:  You wanted to put something on the

22   record.

23            DEFENDANT SYCHANTHA:  Yeah.

24            I would like to address the Court.

25            Judge Cox, I would like for you to remove yourself

1    from my case.  You're really bias.  I have asked for this

2    attorney to be removed from my case.  He refused to file any

3    motion.  I told this attorney that I was kidnapped from Canada

4    without having an extradition hearing.  I have a right to this

5    hearing.  This is a violation of my due process right.

6              I would like to appeal your decision not to appoint

7    me a counsel to the Sixth Circuit court.

8              That's it.

9              THE COURT:  Okay.  Well, first of all, the time for

10   filing motions has long passed.  And the second issue is, I see

11   no basis for recusing myself from your case.

12             DEFENDANT SYCHANTHA:  I have a case law here, Adam

13   versus United States.  Constitution does not force a lawyer

14   upon a defendant.

15             THE COURT:  Well, I understand you have something you

16   want to file.  And, of course, it will be filed.

17             DEFENDANT SYCHANTHA:  Okay.

18             THE COURT:  And why don't you give that to our -- I

19   understand you have a document you want to file?

20             DEFENDANT SYCHANTHA:  No, not yet.  I just want to do

21   it oral.

22             THE COURT:  Do it orally.  Okay.  It's your choice.

23             Mr. Daly, are we ready to proceed?

24             MR. DALY:  Yes, your Honor.

25             THE COURT:  All right.  Let's bring up Mr. Sok.

1         And when he's up, please let me know, okay?

2         MR. DALY:  Okay.

3         (Off the record at 8:56 a.m.)

4         (Back on the record at 9:03 a.m.)

5         THE CLERK:  All rise.

6         Court is now in session.

7         THE COURT:  All right.  Calling the matter of In RE:

8   David Sok and Mr. Daly.

9         Good morning.

10         MR. DALY:  Good morning, Judge.

11         THE COURT:  Good morning, Mr. Sok.

12         THE WITNESS:  Good morning.

13         THE COURT:  Everyone, have a seat.

14         And it's my understanding Mr. Daly had the

15   opportunity to speak with your client yesterday.  You filed a

16   short memo, brief, motion, last night.

17         And again, it's my understanding you had an

18   opportunity to meet with your client this morning, is that

19   fair?

20         MR. DALY:  Yes.

21         THE COURT:  All right.  I'm ready to proceed.

22         MR. DALY:  So let me say this.  Consistent with we're

23   going to take this one-step-at-a-time approach, let me say

24   this, that yesterday when we came to court, we were here for

25   one, and only one purpose, and that was the Court's order

1  compelling Mr. Sok to testify pursuant to the Government's

2  application.  And that was grounded in the expectation that

3  Mr. Sok would assert his Fifth Amendment right.

4        And I indicated to the Court, Mr. Sok said he's not

5  asserting his Fifth Amendment right to that order, but he would

6  defend on the grounds of double jeopardy and the Kastigar

7  letter, and then he mentioned also his safety.

8        After those proceedings were coming to a conclusion,

9  the Government, in essence, changed horses right before the end

10  of the race and brought the issue of the subpoena up, which we

11  had not been defending against.  We were defending against the

12  order.

13        The Government's motion to compel him and -- the

14  application, and the motion to hold him in contempt was all

15  based on that order.

16        Last night, you issued an order.  In that order, you

17  said -- and correct me at any time.

18        THE COURT:  Well, it speaks for itself.

19        MR. DALY:  Yes, it does.

20        But, in essence, you said that the order to compel

21  his testimony, which was the title, didn't in fact compel him

22  to testify and that you would not hold him in contempt under

23  that order if he refused to testify.

24        I think that that's an accurate statement.

25        But then you went on to say that, under the subpoena,

1    if he refused to testify, that you would hold him in contempt

2    and subject him to criminal contempt, is what basically you've

3    said.

4         So, taking it step-by-step, Mr. Sok and I have

5    discussed his different options, and he is going to refuse to

6    testify, but he's going to refuse to testify on his Fifth

7    Amendment rights with regards to the subpoena.

8         Why?

9         Because he can still be prosecuted if he testifies by

10   the State of Michigan, Wayne County Prosecutor's Office, and

11   the Canadian authorities.

12        So with regards to the subpoena and your order, we're

13   asking that you don't hold him in contempt, that he has a valid

14   basis, which is his Fifth Amendment right to refuse to testify

15   under the subpoena.

16        So you may question, if you want, Mr. Sok, but that's

17   what we discussed.

18        My understanding is that Mr. Sok will refuse to

19   testify based on his Fifth Amendment right.

20        THE COURT:  Okay.  Anything further in response,

21   Mr. Martin?

22        MR. MARTIN:  No, your Honor, unless the Court has

23   specific questions for the Government.

24        THE COURT:  I don't.

25        Listening to Mr. Daly just confirms what everyone

1  suspected.  He's an excellent, excellent lawyer, but we're

2  going to proceed as I outlined in the order I issued last

3  night.

4          And, Mr. Sok, could you raise your right hand to the

5  best you can?

6          THE WITNESS:  Yes.

7          (Oath administered at 9:08 a.m.)

8                      **DAVID SOK,**

9      being first duly sworn to tell the truth, was

10      examined and testified upon his oath as follows:

11                      -  -  -

12          THE COURT:  And, sir, could you give us your full

13  name?

14          THE WITNESS:  David Sok.

15          THE COURT:  Yesterday, under oath, you told me that

16  you would not testify in this trial and why.

17          I will give you another opportunity to honor the

18  Court's subpoena and order.  I'm ordering you to answer any

19  questions posed to you by the assistant U.S. attorneys, it's my

20  understanding Mr. Martin, as well as by Mr. Sychantha in this

21  case.

22          Sir, will you do so?

23          THE WITNESS:  No.

24          THE COURT:  Therefore, sir, I find that you are in

25  contempt of court.

1              And a little asterisk on that.

2              Mr. Daly, I didn't -- don't like how the issue played

3    out.

4              MR. DALY:  I don't either, Judge.

5              THE COURT:  And I've done my best to try to make the

6    best decision possible.

7              MR. DALY:  Could you ask Mr. Sok the reason why he is

8    refusing to testify?

9              THE COURT:  I did yesterday.

10             MR. DALY:  Yes, but now we're on different grounds.

11             THE COURT:  I'll tell you what.  If you wish, you may

12   do so.

13             MR. DALY:  Thank you.

14             Mr. Sok, you've indicated that you refuse to testify.

15   The Judge has indicated that he's going to hold you in contempt

16   under the subpoena if you do so.

17             Do you understand that?

18             THE WITNESS:  Yes.

19             MR. DALY:  And you're refusing to testify on what

20   grounds?

21             THE WITNESS:  My Fifth Amendment rights.

22             MR. DALY:  Okay.  Would you also assert the other

23   rights that you have previously, the double jeopardy rights and

24   your right under the Kastigar letter?

25             THE WITNESS:  Yes.

1         MR. DALY:  Okay.  Thank you, Judge.

2         THE COURT:  All right.  Very good.

3         Yes, sir?

4         MR. MARTIN:  Your Honor, may I inquire just a few

5  questions?

6         THE COURT:  Any objection?

7         MR. DALY:  Yeah, I object.  I don't know what the

8  purpose of the questions are, Judge.

9         THE COURT:  What would be the purpose of the

10  questions?

11         MR. MARTIN:  Your Honor, like any witness, and the

12  purpose would be to clarify for the record that he has a

13  certain basis that he's asserting, but whether he has the

14  knowledge that, based upon the Court's orders, that he in

15  fact -- at least the Court has determined a certain basis to

16  not be actually relevant in this case.

17         And I think because defense counsel has been allowed

18  to inquire of his own client, the Government, as a part of this

19  proceeding, should be allowed to cross-examine the witness on

20  those answers that he just gave for the record.

21         MR. DALY:  I disagree.

22         THE COURT:  Based upon what?

23         MR. DALY:  The right that Mr. Sok has not to testify,

24  what grounds, what privileges he may assert are reserved for

25  him.  The Government has no stake in him asserting his

1    constitutional rights.  Whether they agree with him or not

2    doesn't really matter.

3            But the only thing that's important is, is he going

4    to testify and why is he not testifying?  The record is clear

5    in that regard.

6            So for the Government to try to cross-examine him on

7    the assertion of his rights is not proper at all, Judge.

8            THE COURT:  Okay.  I've made a finding --

9            MR. DALY:  Yes.

10           THE COURT:  -- all right?

11           And it's time to move on with the trial.

12           MR. DALY:  What's next besides the trial?

13           What about Mr. Sok?

14           THE COURT:  Nothing right now.

15           MR. DALY:  Okay.  Then I have two requests; that you

16   hold your order of contempt in abeyance, first of all, so that

17   we can appeal.  This is a final order, contempt order, so that

18   we can appeal.

19           And, secondly, that you unseal your order, because

20   that would be the basis along with what has transpired in court

21   for the appeal.

22           Those are my two requests.

23           THE COURT:  Well, one step at a time.

24           MR. DALY:  Sure.

25           THE COURT:  File a request.

Jury Trial - Volume 5 - 10/17/2024

1           MR. DALY:  Okay.  I will do so.

2           THE COURT:  That gives me an opportunity to study it,

3   okay?

4           MR. DALY:  Yes.

5           THE COURT:  All right.  I think we're all good now.

6           MR. DALY:  Thank you very much.  Have a good day.

7           THE COURT:  Okay.  Mr. Sok, thank you very much.

8           THE WITNESS:  Thank you.

9           THE COURT:  So the jury will be coming out in about

10  20 minutes.

11          And where do we stand now with the case, the

12  Government's presentation of its proofs?

13          MR. NORWOOD:  Your Honor, at this point, the

14  Government will not be calling any additional witnesses and we

15  will rest.

16          THE COURT:  Okay.  All right.

17          DEFENDANT SYCHANTHA:  I call Brian Manns back to the

18  stand, your Honor.

19          THE COURT:  Call who?

20          DEFENDANT SYCHANTHA:  Brian Manns.

21          THE COURT:  Well, you have the opportunity to present

22  a case --

23          DEFENDANT SYCHANTHA:  Yeah.

24          THE COURT:  -- okay?

25          DEFENDANT SYCHANTHA:  Yeah.

1    THE COURT:  So I -- so the Government is going to

2  come out -- the jury is going to come out.  And it looks like

3  the Government is going to say they rest.  And I'm going to

4  have the jury go back in.  And then I'm going to ask you

5  whether or not you wish to present a case, all right?

6    And if you wish to present a case, you may.

7    DEFENDANT SYCHANTHA:  Okay.

8    THE COURT:  Call witnesses or whatever.

9    DEFENDANT SYCHANTHA:  All right.

10    THE COURT:  And, of course, you can testify on your

11  behalf or not testify on your behalf, okay?

12    DEFENDANT SYCHANTHA:  Okay.

13    THE COURT:  It's all up to you.  And I'm sure

14  Mr. Steingold has reviewed that, those issues with you, and

15  you've reviewed the jury instruction packet, and I see there's

16  the jury instruction that indicates to me that you may not be

17  testifying.  And the jury will be read that instruction, will

18  have that instruction, that if you don't testify, they cannot

19  hold that against you.

20    Did you see that instruction?

21    DEFENDANT SYCHANTHA:  Yes.

22    THE COURT:  So the process is, let the Government

23  conclude their case, and then the jury will go back, and you

24  can tell me whether or not you wish to present a case.  If you

25  do, start calling some witnesses, okay?

Jury Trial - Volume 5 - 10/17/2024

1          DEFENDANT SYCHANTHA:  Thank you.

2          THE COURT:  It's totally up to you, all right?

3          DEFENDANT SYCHANTHA:  Yes.

4          THE COURT:  Okay.  So that's the game plan, all

5    right?

6          So I think we're going to have to tweak the jury

7    instructions, okay, based upon Mr. Sok not testifying.  There

8    were two different drafts, so one draft with him testifying,

9    one draft without him.

10          So hand me the one jury instruction packet that we

11    are going to use, okay?

12          MR. NORWOOD:  Yes, your Honor.

13          THE COURT:  Agreeable?

14          Agreeable to the defense?

15          DEFENDANT SYCHANTHA:  Yes.

16          THE COURT:  Okay.  Oh, and the exhibit list is going

17    to have to be altered as well, right, based upon Mr. Sok?

18          It looks like --

19          MR. MARTIN:  Yes, your Honor.  Yes.

20          THE COURT:  -- certain proposed exhibits will not be

21    getting into evidence.

22          MR. NORWOOD:  That's correct, your Honor.

23          THE COURT:  And so, again, let's get a clean exhibit

24    list, because the exhibit list goes into the jury as well with

25    the jury instruction packet.  It goes to the foreperson.

Jury Trial - Volume 5 - 10/17/2024

1        Agreeable to everybody?

2            DEFENDANT SYCHANTHA:  Yes.

3            THE COURT:  Okay.

4            MR. MARTIN:  Your Honor, I apologize, and I know you

5   set off the sequence.  I just want to make sure we understand

6   it so we follow it.

7            You'll bring in the jury, we will rest in front of

8   the jury, and then will the Court then be asking the jury to

9   leave so the Court can inquire the defendant as to whether he

10  plans to testify?

11           THE COURT:  I'm going to ask -- have the jury go back

12  in.

13           MR. MARTIN:  Okay.

14           THE COURT:  And I'll find out whether or not defense

15  is going to present a case, all right?  And in good thought

16  I'll ask the defendant whether or not he wishes to testify.

17  And if he doesn't wish -- and if he's discussed the issue with

18  his attorney -- or with Mr. Steingold.  But that's a good

19  thought.  Take care of those two.

20           MR. MARTIN:  Thank you, your Honor.  Thank you.

21           THE COURT:  Is that also agreeable?

22           DEFENDANT SYCHANTHA:  Yes, your Honor.

23           THE COURT:  Okay.  All right.

24           THE CLERK:  Court is in recess.

25           (Off the record at 9:18 a.m.)

18

1              (Back on the record at 9:26 a.m.)

2              THE CLERK:  All rise.  The United States District

3    Court for the Eastern District of Michigan is back in session.

4              Please be seated.  And it calls Case Number 05-81165,

5    United States of America versus Khaophone Sychantha.

6              Counsel, can I have appearances, please?

7              MR. NORWOOD:  Good morning, your Honor.  Jason

8    Norwood on behalf of the United States.

9              MR. MARTIN:  And Patrick Martin on behalf of the

10   United States.  Good morning, your Honor.

11             THE COURT:  Good morning.

12             Ready for the jury?

13             MR. NORWOOD:  Yes, your Honor.

14             THE COURT:  Ready.

15             DEFENDANT SYCHANTHA:  Yes, your Honor.

16             THE CLERK:  All rise for the jury.

17             (JURY IN AT 9:28 a.m.)

18             THE CLERK:  Please be seated.

19             THE COURT:  Now, don't get too comfortable.  You'll

20   find out in a moment.

21             All right.  Mr. Norwood, Mr. Martin, any further

22   witnesses?

23             MR. NORWOOD:  No, your Honor.

24             At this time, the Government rests.

25             THE COURT:  Okay.  Now, I'm just going to have you go

1   back into the jury room for a quick minute.  And when you come

2   out, I'm going to ask the defense, the defendant, whether or

3   not he wishes to present a case, okay?

4          Remember, the defense is under no obligation to do or

5   prove anything during the course of the trial.  Therefore, the

6   defense is under no obligation to call any witnesses, no

7   obligation to present any documents or objects for your

8   consideration.

9          And, of course, as we discussed several times,

10  defense is under no obligation, the defendant is under no

11  obligation to testify.

12         Do all of you understand that?

13         JURORS:  Yes.

14         THE COURT:  And if he exercises his constitutional

15  right not to testify, you can't hold that against him.

16         Everyone understand?

17         JURORS:  Yes.

18         THE COURT:  All right.  So go back in the jury room.

19  Don't get comfortable there, either.  I'll be bringing you

20  right back out.

21         THE CLERK:  All rise for the jury.

22         (JURY OUT AT 9:30 a.m.)

23         THE CLERK:  Please be seated.

24         THE COURT:  Sir, do you wish to present a case?

25         DEFENDANT SYCHANTHA:  Yes, your Honor.

Jury Trial - Volume 5 - 10/17/2024

1        THE COURT:  Okay.  It's my understanding that you

2    wish to call Special Agent Manns, is that accurate?

3        DEFENDANT SYCHANTHA:  Yes.

4        THE COURT:  Okay.  And any other witnesses -- do you

5    anticipate calling any other witnesses?

6        DEFENDANT SYCHANTHA:  No.

7        THE COURT:  Okay.  Have you decided whether or not

8    you wish to testify?

9        DEFENDANT SYCHANTHA:  No, I'm not going to testify,

10   your Honor.

11       THE COURT:  Okay.  Did you discuss the issue of

12   whether you wish to testify or not with Mr. Steingold?

13       DEFENDANT SYCHANTHA:  Yes.

14       THE COURT:  Okay.  Is that accurate, Mr. Steingold?

15       MR. STEINGOLD:  Yes, it is, your Honor.

16       THE COURT:  Is it agreeable to you, sir, or would you

17   want Mr. Steingold voir dire you to ask you questions about

18   that issue of whether or not you should or should not testify

19   or wish to testify or not?

20       DEFENDANT SYCHANTHA:  Say -- yes.

21       THE COURT:  Mr. Steingold, you may proceed.

22       MR. STEINGOLD:  Mr. Sychantha, you understand you

23   have a right to testify on your own behalf, correct?

24       DEFENDANT SYCHANTHA:  Yes.

25       MR. STEINGOLD:  And nobody can stop you from

1    testifying.  It's your decision whether to testify.  And you

2    understand that if you don't testify, the Judge is going to

3    instruct the jury, again, that they can draw no adverse

4    inference from your refusal to testify?

5            DEFENDANT SYCHANTHA:  Yes.

6            MR. STEINGOLD:  Do you have any thoughts, any

7    questions about your right to testify?

8            DEFENDANT SYCHANTHA:  No.

9            MR. STEINGOLD:  You understand once you give it up,

10   you're not going to be able to change your mind later on?

11           DEFENDANT SYCHANTHA:  Yes.

12           THE COURT:  And again, sir, is it your decision --

13           DEFENDANT SYCHANTHA:  Yes.

14           THE COURT:  -- not to testify.

15           DEFENDANT SYCHANTHA:  Yes.

16           THE COURT:  Any questions for the Court?

17           DEFENDANT SYCHANTHA:  No.

18           THE COURT:  All right.  Very good.

19           Let's bring the jury out.

20           THE CLERK:  All rise for the jury.

21           (JURY IN AT 9:33 a.m.)

22           THE CLERK:  Please be seated.

23           THE COURT:  Sir, do you wish to present a case?

24           DEFENDANT SYCHANTHA:  Yes, your Honor.

25           THE COURT:  And who -- it's my understanding you wish

Jury Trial - Volume 5 - 10/17/2024

 1  to call a witness?

 2          DEFENDANT SYCHANTHA:  Yes.

 3          THE COURT:  And who would that be?

 4          DEFENDANT SYCHANTHA:  Special Agent Brian Manns.

 5          THE COURT:  All right.  Sir, come up, please.

 6          And again, could you give your name to the court

 7  reporter?

 8          THE WITNESS:  Yes.

 9                  **SPECIAL AGENT BRIAN MANNS,**

10       being first duly sworn to tell the truth, was

11       examined and testified upon his oath as follows:

12                         -   -   -

13          THE COURT:  Please have a seat in the witness chair.

14                                  (9:34 a.m.)

15                  DIRECT EXAMINATION

16  BY DEFENDANT SYCHANTHA:

17  Q.  Special Manns, so you were the lead investigator of this

18  case?

19  A.  Yes, I am.

20  Q.  Okay.  Do you have my extradition warrant?

21  A.  I do not.

22  Q.  You do not?

23          Then how -- how -- how am I brought to this country

24  from Canada?

25          MR. NORWOOD:  Objection, your Honor.

Jury Trial - Volume 5 - 10/17/2024

1          THE COURT:  Not relevant.

2          DEFENDANT SYCHANTHA:  Well --

3          THE COURT:  Not relevant.

4          DEFENDANT SYCHANTHA:  Okay.

5    BY DEFENDANT SYCHANTHA:

6    Q.   Is there a statute of limitation on drug charges?

7    A.   There are a statute of limitations, correct.

8    Q.   What do you --

9          MR. NORWOOD:  Objection, your Honor.  Relevance.

10          THE COURT:  Sustained.

11   BY DEFENDANT SYCHANTHA:

12   Q.   What is the years on the statute of limitation?

13          MR. NORWOOD:  Objection, your Honor.

14          THE COURT:  Irrelevant.

15   BY DEFENDANT SYCHANTHA:

16   Q.   How come it took so long for you to bring this case to

17   trial?

18   A.   Bringing a case to trial is dependent upon the U.S.

19   attorneys --

20          MR. NORWOOD:  Objection, your Honor.  Relevance.

21          THE COURT:  Let's have a sidebar.

22          (Sidebar held outside the hearing of the jury at

23          9:35 a.m.)

24          THE COURT:  Why would it be relevant?

25          MR. NORWOOD:  United States Attorney's Office would

1   make decisions as to when cases are charged, so Agent Manns

2   would have no information about that, nor does that go to the

3   merits of this case when this case was charged, so it would be

4   irrelevant to the legal merits of this case, the date and time

5   where the defendant was charged.

6           THE COURT:  Your response?

7           DEFENDANT SYCHANTHA:  I didn't get that.

8           What did you say?

9           MR. NORWOOD:  Sure.

10          So I said was -- and I'm paraphrasing.

11          I said, U.S. Attorney's Office makes decisions on

12  when defendants are charged.  And Agent Manns will not have any

13  information about that (inaudible).  And so no basis for legal

14  merits, meaning, what this case is about, when the case would

15  be charged, and is not relevant.

16          DEFENDANT SYCHANTHA:  You guys would have

17  (inaudible), right?

18          MR. NORWOOD:  Right, but Agent Manns is an agent.

19          MR. STEINGOLD:  The witness has just said I don't

20  know.

21          THE COURT:  So I could see it would seem to be it

22  would be irrelevant, and then I don't know what his response

23  would be, and it would open -- be a whole line of testimony

24  that would be totally irrelevant to the issues for the jury to

25  decide.

Jury Trial - Volume 5 - 10/17/2024

1           MR. NORWOOD:  Very well.

2           THE COURT:  So that's --

3           MR. NORWOOD:  Thank you.

4           (Sidebar concluded at 9:38 a.m.)

5           THE COURT:  Objection sustained.

6           You may proceed, sir.

7   BY DEFENDANT SYCHANTHA:

8   Q.   So --

9           DEFENDANT SYCHANTHA:  Can I have a minute, your

10  Honor?

11          THE COURT:  Yes, take your time.

12          DEFENDANT SYCHANTHA:  Okay.

13  BY DEFENDANT SYCHANTHA:

14  Q.   Special Manns, how long has the case been going on for?

15  A.   My case started in 2005.

16  Q.   So that's 19 years?

17  A.   Yes, sir.

18  Q.   Would you say that's way past the statute of limitation?

19          THE COURT:  Again, that issue is not relevant.

20          DEFENDANT SYCHANTHA:  Okay.  That's it, your Honor.

21          THE COURT:  Sure.

22          Any questions from the Government?

23          MR. NORWOOD:  No questions, your Honor.

24          THE COURT:  Sir, you may step down.

25          THE WITNESS:  Thank you, your Honor.

1          THE COURT:  Any further witnesses from the defense?

2          DEFENDANT SYCHANTHA:  Can I ask that Government to

3    produce --

4          THE COURT:  If you have a motion, it's not in front

5    of the jury.

6          DEFENDANT SYCHANTHA:  Oh, okay.

7          THE COURT:  Do you want to have a sidebar?

8          DEFENDANT SYCHANTHA:  No.  That's it, your Honor.

9          THE COURT:  Okay.  Do you rest?  Do you conclude your

10   case?

11          DEFENDANT SYCHANTHA:  Yes.

12          THE COURT:  All right.  Rebuttal from the Government?

13          MR. NORWOOD:  No rebuttal witnesses, your Honor.

14          THE COURT:  Members of the jury, that concludes the

15   presentation of the case to you.  You've heard from the

16   witnesses you're going to hear from and you saw various

17   documents or objects that have been received into evidence as

18   exhibits.

19          We're moving into the final stage of the trial.

20   Shortly, I will give the jury instructions to you, and the jury

21   instructions are the law that applies to this case.  Each of

22   you will receive your own jury instruction packet, and so as

23   I'm reading the jury instructions, you can follow along in your

24   jury instruction packet.

25          When that's concluded, we'll move into the very final

1   stage of the trial, closing arguments.  During closing

2   arguments, start with first, either Mr. Martin or Mr. Norwood,

3   they will get up and they're going to give their closing

4   argument to you.  In that closing argument, they're going to

5   tell you what they believe the evidence has shown to you.  When

6   they're done, Mr. Sychantha has the opportunity to give a

7   closing argument to you.  Like the U.S. attorneys, he will tell

8   you what he believes the evidence has shown to you.  When he's

9   done, since, again, the Government has the burden of proof, the

10  law allows the Government a rebuttal closing argument.

11          When we're done with the closing arguments, one of

12  you will be excused to form a jury of 12.  The 12 will go into

13  the jury room and begin your deliberations.  Your first duty,

14  first obligation, as the jurors in this case is to select your

15  foreperson.  Take your time.  When you're selecting your

16  foreperson, remember, your foreperson is your manager, manages

17  the deliberations.

18          When you have selected your foreperson, foreperson

19  will write a note, hit the buzzer, knock on the door and hand

20  us a note saying that you have you've selected your foreperson.

21          At that time, we'll hand in all your notes, your jury

22  instruction packet, and we'll have an original jury instruction

23  packet and verdict form for the foreperson.

24          The foreperson is also going to have a list of all

25  the exhibits that have been received into evidence during the

1    trial.  And if you want any or all the exhibits that have been

2    admitted, all you have to do is just ask for them, okay?

3          With respect to the drugs that have been admitted

4    during the course of the trial, if you want to see the drugs

5    that have been admitted, we will have a court officer bring

6    those drugs -- that packet of drugs or packets of drugs in the

7    jury room for you to look at, okay?  And then when you're done

8    looking at them, they will be taken out of the jury room, okay?

9          Everyone essentially got the process?

10          JURORS:  Yes.

11          THE COURT:  Okay.  So I need you to go in the jury

12    room right now.  And we're finalizing the jury instruction

13    packet, okay?  We've moved a lot faster than anticipated.  So

14    we're just trying to catch up, okay?

15          All right.  Thank you.

16          THE CLERK:  All rise.

17          (JURY OUT AT 9:43 a.m.)

18          THE CLERK:  Please be seated.

19          THE COURT:  So do we have the packets ready?

20          MR. MARTIN:  Yes, your Honor.

21          May I approach?

22          THE COURT:  Yes, please.

23          MR. MARTIN:  Your Honor, I'm handing Ms. McCoy 16

24    copies of the final jury instructions, as well as two copies of

25    the verdict form.

1          THE COURT:  And have they been shared with the

2    defense?

3          MR. MARTIN:  Yes, there's a copy with Mr. Sychantha

4    and Mr. Steingold.

5          THE COURT:  I'm going to take a packet back to my

6    office and just review it again, okay?

7          MR. MARTIN:  Yes, your Honor.

8          THE COURT:  Just give me a few minutes.

9          MR. MARTIN:  Yes, your Honor.

10          THE CLERK:  All rise.

11          THE COURT:  And are we working on the exhibit list?

12          MR. NORWOOD:  We are, your Honor.

13          MR. MARTIN:  Yes, your Honor.

14          THE COURT:  Okay.

15          THE CLERK:  Court is in recess.

16          (Off the record at 9:45 a.m.)

17          (Back on the record at 9:51 a.m.)

18          THE CLERK:  All rise.

19          Court is back in session.

20          THE COURT:  So you have submitted the jury

21    instructions, as well as the verdict form, that you wish me to

22    read to the jury and submit to the jury, is that correct?

23          MR. NORWOOD:  Yes, your Honor.

24          THE COURT:  Is that correct, sir?

25          DEFENDANT SYCHANTHA:  Yes, your Honor.

 1          THE COURT:  Okay.  And I have reviewed them as well.

 2          And we're going to -- we're putting the jury

 3  instructions -- providing each member of the jury a copy of the

 4  jury instructions and the verdict form.

 5          Then, the plan would be to break and set up for

 6  closings, if that's agreeable to everybody.

 7          MR. NORWOOD:  It is, your Honor.

 8          DEFENDANT SYCHANTHA:  Yes, your Honor.

 9          THE COURT:  And how much time do you need -- how much

10  of a break do you need to set up for closings?

11          And I'm not -- I'm not rushing you.  Take --

12          MR. NORWOOD:  About 15 to 20 minutes would be

13  perfect, your Honor.

14          THE COURT:  Okay.  Then I'll give the jury their

15  morning break at that time.

16          MR. NORWOOD:  Okay.

17          THE COURT:  And before you start your closing, I'm

18  going to ask you this question, how much time do you need to

19  close?

20          MR. NORWOOD:  About 25 minutes, your Honor.

21          THE COURT:  I didn't ask for the answer yet.

22          MR. NORWOOD:  I'm sorry, your Honor.  I apologize.

23          THE COURT:  As long as you're reasonable, you got it,

24  okay?

25          Understand, sir?

31

1          DEFENDANT SYCHANTHA:  Yes.

2          THE COURT:  All right.  Shall we start with the jury

3   instructions?

4          Are we ready?

5          MR. NORWOOD:  Yes, your Honor.

6          THE COURT:  Sir, are we ready?

7          DEFENDANT SYCHANTHA:  Yes, your Honor.

8          THE CLERK:  All rise for the jury.

9          (JURY IN AT 9:53 a.m.)

10          THE CLERK:  Please be seated.

11          THE COURT:  All right.  Does everyone have the jury

12   instruction packet?

13          JURORS:  Yes.

14          THE COURT:  Okay.  Now, remember, the jury

15   instructions are the law that applies to this case.  You decide

16   the facts of the case.  You decide what happened.  Not me,

17   right?

18          And you take your decision as to the facts of the

19   case, what happened, coupled with the law as I give it to you

20   in the jury instruction packet.  And in that way, that manner,

21   you reach your decision, you reach your verdict.

22          Everyone understand?

23          JURORS:  Yes.

24          THE COURT:  Now, see page 1?  Rip it off because

25   these are the jury instructions.  They're not the proposed jury

1    instructions, okay?

2            Ready.

3            Okay.  Page 2:  Members of the jury, now it is time

4    for me to instruct you about the law you must follow in

5    deciding this case.  I will start by explaining your duties and

6    general rules that apply in every criminal case, then I will

7    explain the parts, the elements, of the crime that the

8    defendant is charged -- sorry -- is accused of committing.

9    Then, I will explain some rules that you must follow in

10   evaluating particular testimony and evidence.

11           And last, I will explain the rules that you must

12   follow during your deliberations in the jury room and the

13   possible verdicts that you may return.

14           Please listen very carefully to everything I say.

15           Juror Duties.

16           You have two main duties as jurors.  The first one is

17   to decide what the facts are from the evidence that you saw and

18   heard here in court.  Deciding what the facts are is your job,

19   not mine, and nothing that I have said or done during this

20   trial was meant to influence your decision about the facts in

21   any way.

22           Your second duty is to take the law that I give you,

23   apply it to the facts, and decide if the Government has proved

24   the defendant guilty beyond a reasonable doubt.  It is my job

25   to instruct you about the law, and you are bound by the oath

1  that you took at the beginning of the trial to follow the

2  instructions that I give you, even if you personally disagree

3  with them.  This includes the instructions that I gave you

4  before the trial and during the trial, and these instructions.

5  All the instructions are important, and you should consider

6  them together as a whole.

7         The lawyers have talked -- will talk about the law

8  during the closing arguments.  But if what they say is

9  different from what I say, you must follow what I say.  What I

10 say about the law controls.

11        Perform these duties fairly.  Do not let any bias,

12 sympathy or prejudice that you may feel toward one side or the

13 other influence your decision in any way.

14        Page 4, Presumption of Innocence, Burden of Proof,

15 Reasonable Doubt.

16        As you know, the defendant has pled not guilty to the

17 crime charged in the indictment, or crimes charged in the

18 indictment.  The indictment is not any evidence at all of

19 guilt.  It is just the formal way the Government tells the

20 defendant what crime he is accused of committing.  It does not

21 even raise any suspicion of guilt.

22        Instead, the defendant starts the trial with a clean

23 slate, with no evidence at all against him, and the law

24 presumes that he is innocent.  This presumption of innocence

25 stays with him unless the Government presents evidence here in

1     court that overcomes the presumption and convinces you beyond a

2     reasonable doubt that he is guilty.

3           This means that the defendant has no obligation to

4     present any evidence at all or to prove to you in any way that

5     he is innocent.  It is up to the Government to prove that he is

6     guilty, and this burden stays on the Government from the --

7     from start to finish.  You must find the defendant not guilty

8     unless the Government convinces you beyond a reasonable doubt

9     that he is guilty.

10          The Government must prove every element of the crime

11    charged beyond a reasonable doubt.  Possible doubts or doubts

12    based purely on speculation are not reasonable doubts.  A

13    reasonable doubt is a doubt based on reason and common sense.

14    It may arise from the evidence, the lack of evidence, or the

15    nature of the evidence.

16          Proof beyond a reasonable doubt means proof that is

17    so convincing that you would not hesitate to rely and act on it

18    while making the most important decisions in your own lives.

19    If you are convinced that the Government has proved the

20    defendant guilty beyond a reasonable doubt, say so by returning

21    a guilty verdict.  If you are not convinced, say so by

22    returning a not guilty verdict.

23           You must make your decision based only on the

24    evidence that you saw and heard here in court.  Do not let

25    rumors, suspicions, or anything else that you may have seen or

1  heard outside of court influence your decision in any way.

2         The evidence in this case includes only what the

3  witnesses said while they were testifying under oath, the

4  exhibits that I allowed into evidence and the stipulations that

5  the parties agreed to.

6         Nothing else is evidence.  The lawyers' statements

7  and arguments are not evidence.  Their questions and objections

8  are not evidence.  My legal rulings are not evidence.  And my

9  comments are not evidence.

10        During the trial, I did not let you hear the answers

11 to some of the questions that the lawyers or the defendant

12 asked.  I also ruled that you could not see some of the

13 exhibits that the lawyers may have wanted you to see.  And

14 sometimes I ordered you to disregard things that you saw or

15 heard or I struck things from the record.  You must completely

16 ignore all of these things.  Do not even think about them.  Do

17 not speculate about what a witness may have said or what an

18 exhibit might have shown.  These things are not evidence, and

19 you are bound by your oath not to let them influence your

20 decision in any way.

21        Make your decision based only on the evidence, as I

22 have defined it here, and nothing else.

23        Page 7, Consideration of Evidence.

24        You are to consider only the evidence in the case.

25 You should use your common sense in weighing the evidence.

1    Consider the evidence in light of your everyday experience with

2    people and events and give it whatever weight you believe it

3    deserves.  If your experience tells you that certain evidence

4    reasonably leads to a conclusion, you are free to reach that

5    conclusion.

6          In our lives, we often look at one fact and conclude

7    from it that another fact exists.  In law, we call this an

8    inference.  A jury is allowed to make reasonable inferences,

9    unless otherwise instructed.  Any inferences you make must be

10   reasonable and must be based on the evidence in the case.

11         The existence of an inference does not change or

12   shift the burden of proof from the Government to the defendant.

13         Page 8, Direct and Circumstantial Evidence.

14         Now, some of you may have heard the terms "direct

15   evidence" and "circumstantial evidence."

16          You'll recall we went over these terms when we first

17   got together last week.

18         Direct evidence is simply evidence like the testimony

19   of an eyewitness, which, if you believe it, directly proves a

20   fact.  If a witness testified that he saw it raining outside,

21   and you believed him, that would be direct evidence that it was

22   raining.

23         Circumstantial evidence is simply a chain of

24   circumstances that indirectly proves a fact.  If someone walked

25   into the courtroom wearing a raincoat covered with small drops

1 of water or with drops of water and carrying a wet umbrella,

2 that would be circumstantial evidence from which you conclude

3 that it is raining.

4 It is your job to decide how much weight to give the

5 direct and circumstantial evidence. The law makes no

6 distinction between the weight that you should give to either

7 one or say that one is any better evidence than the other. You

8 should consider all the evidence, both direct and

9 circumstantial, and give it whatever weight you believe it

10 deserves.

11 Page 9, Credibility of Witnesses.

12 Another part of your job as jurors is to decide how

13 credible or believable each witness was. This is your job, not

14 mine. It is up to you to decide if a witness' testimony was

15 believable and how much weight you think it deserves. You are

16 free to believe everything that a witness said or only part of

17 it, or none of it at all. But you should act reasonably and

18 carefully in making these decisions.

19 Let me suggest some things for you to consider in

20 evaluating each witness' testimony.

21 Ask yourself if the witness was able to clearly see

22 or hear the events. Sometimes even an honest witness may not

23 have been able to see or hear what was happening and may make a

24 mistake.

25 Ask yourself how good the witness' memory seemed to

1   be.  Did the witness seem able to accurately remember what

2   happened?

3          Ask yourself if there was anything else that may have

4   interfered with the witness' ability to perceive or remember

5   the events.

6          Ask yourself how the witness acted while testifying.

7   Did the witness appear honest?  Or did the witness appear to be

8   lie?

9          Ask yourself if the witness had any relationship to

10  the Government or the defendant, or anything to gain or lose

11  from the case, that might influence the witness' testimony.

12  Ask yourself if the witness had any bias or prejudice, or

13  reason for testifying that might cause a witness to lie or to

14  slant the testimony in favor of one side or the other.

15         Ask yourself if the witness testified inconsistently

16  while on the witness stand or if the witness said or did

17  something, or failed to say or do something, at any other time

18  that is inconsistent with what the witness said while

19  testifying.  If you believe that the witness was inconsistent,

20  ask yourself if this makes the witness' testimony less

21  believable.  Sometimes it may, other times it may not.

22  Consider whether the inconsistency was about something

23  important or about some unimportant detail.  Ask yourself if it

24  seemed like an innocent mistake or if it seemed deliberate.

25         And ask yourself how believable the witness'

1  testimony was in light of all the other evidence.  Was the

2  witness' testimony supported or contradicted by other evidence

3  that you found believable?  If you believe that a witness'

4  testimony was contradicted by other evidence, remember that

5  people sometimes forget things, and that even two honest people

6  who witness the same event may not describe it exactly the same

7  way.

8          These are only some of the things that you may

9  consider in deciding how believable each witness was.  You may

10  also consider other things that you think shed some light on

11  the witness' believability.  Use your common sense and your

12  everyday experience in dealing with other people.  And then

13  decide what testimony you believe and how much weight you think

14  it deserves.

15          The testimony of a law enforcement officer is

16  entitled to no greater weight than that of other witnesses

17  simply because he or she is a law enforcement officer.

18          Number of Witnesses, page 12.

19          One more point about witnesses.  Sometimes jurors

20  wonder if the number of witnesses who testified makes any

21  difference.  Do not make any decisions based only on the number

22  of witnesses who testified.  What is more important is how

23  believable the witnesses were and how much weight you think

24  their testimony deserves.  Concentrate on that, not the

25  numbers.

1            Lawyers' Objections, page 13.

2            There's one more general subject that I want to talk

3    to you about before I begin explaining the elements of the

4    crime charged.

5            The lawyers for both sides objected to some of the

6    things -- or lawyers and the defendant objected to some things

7    that were said or done during the trial.  Do not hold that

8    against them.  The lawyers and the defendant have a right --

9    sorry -- have a duty to object whenever they think something is

10   not permitted by the Rules of Evidence.  Those rules are

11   designed to make sure that both sides receive a fair trial.

12           And do not interpret my rulings on their objections

13   as any indication of how I think the case should be decided.

14   My rulings were based on the Rules of Evidence, not on how I

15   feel about the case.  Remember that your decision must be based

16   only on the evidence that you saw and heard here in court.

17           Page 14, Defining the Crime, Introduction.

18           That concludes my part of my instructions explaining

19   your duty and the general rules that apply in every criminal

20   case.  In a moment, I will explain the elements of the crimes

21   that the defendant is accused of committing.  But before I do

22   that, I want to emphasize that the defendant is only on trial

23   for the particular crimes charged in the indictment.  Your job

24   is limited to deciding whether the Government has proved the

25   crimes charged.

1        And also keep in mind that whether anyone else should

2  be prosecuted and convicted for these crimes is not a proper

3  matter for you to consider.  The possible guilt of others is no

4  defense to a criminal charge.  Your job is to decide if the

5  Government has proved this defendant guilty.  Do not let the

6  possible guilt of others influence your decision in any way.

7        Count One - Conspiracy to Violate the Drug Laws, 21

8  U.S.C. Section 846.

9        Count One of the indictment charges the defendant

10  with conspiracy to possess with intent to distribute controlled

11  substances.

12        It is a crime for two or more persons to conspire, or

13  agree, to commit a drug crime, even if they never actually

14  achieve their goal.

15        A conspiracy is a kind of criminal partnership.  For

16  you to find the defendant guilty of the conspiracy charge, the

17  Government must prove each and every one of the following

18  elements beyond a reasonable doubt:

19        First, that beginning on or about May 1, 2003, and

20  continuing throughout on or about January 2011, defendant,

21  together with others known and unknown, did knowingly,

22  intentionally and unlawfully combine, conspire, confederate and

23  agree to possess, with the intention to distribute, and

24  distribute one or more controlled substances, specifically, a

25  substance containing a detectable amount of N-Benzylpiperazine,

1  also known as BZP, which is a Schedule I controlled substance;

2  500 grams or more of a substance containing a detectable amount

3  of methamphetamine, which is a Schedule II controlled

4  substance; five grams or more of methamphetamine, which is a

5  Schedule II controlled substance; and a substance containing a

6  detectable amount of MDMA, methylenedioxymethamphetamine, also

7  known as ecstasy, which is a Schedule I controlled substance.

8          And second, that the defendant knowingly and

9  voluntarily joined the conspiracy.

10          Now, I will give you more detailed instructions on

11  some of these terms.

12          With regard to the first element, a criminal

13  agreement, the Government must prove that two or more persons

14  conspired or agreed to cooperate with each other to distribute

15  or to possess with intent to distribute a controlled substance.

16          This does not require proof of any formal agreement,

17  written or spoken, nor does this require proof that everyone

18  involved agreed on all the details.  But proof that people

19  simply met from time to time and talked about common interests,

20  or engaged in similar conduct, is not enough to establish a

21  criminal agreement.  These are things that you may consider in

22  deciding whether the Government has proved an agreement.  But

23  without more, they are not enough.

24          What the Government must prove is that there was a

25  mutual understanding, either spoken or unspoken, between two or

1    more people to cooperate with each other to possess with intent

2    to distribute controlled substances.  This is essential.

3         An agreement can be proved indirectly by facts or

4    circumstances which lead to a conclusion that an agreement

5    existed.  But it is up to the Government to -- but it is up to

6    the Government to convince you that such facts and

7    circumstances existed in this particular case.

8         One more point about the agreement.  The indictment

9    accuses the defendant of conspiring to commit several drug

10   crimes.  The Government does not have to prove that the

11   defendant agreed to commit all these crimes.  But the

12   Government must prove an agreement to commit at least one of

13   them for you to return a guilty verdict on the conspiracy

14   charge.

15        With regard to the second element, the defendant's

16   connection to the conspiracy, the Government must prove that

17   the defendant knowingly and voluntarily joined that agreement.

18   The Government must prove that the defendant knew the

19   conspiracy's main purpose and voluntarily joined the conspiracy

20   intending to help advance or achieve its goals.  This does not

21   require proof that a defendant knew everything about the

22   conspiracy, or everyone else involved, or that he was a member

23   of it from the very beginning, nor does it require proof that a

24   defendant played a major role in the conspiracy, or that his

25   connection to it was substantial.  A slight role or connection

1   may be enough.

2           Further, this does not require proof that a defendant

3   knew the drugs involved were Benzylpiperazine or MDMA or BZP or

4   methylenedioxymethamphetamine, which is known as ecstasy.  It

5   is enough that the defendant knew that it was some kind of

6   controlled substance, nor does it require proof that a

7   defendant knew how much BZP or MDMA, ecstasy, was involved.  It

8   is enough that the defendant knew that some quantity was

9   involved.

10          But proof that a defendant simply knew about a

11  conspiracy, or was present at times, or associated with members

12  of the group, is not enough, even if he approved of what was

13  happening or did not object.  Similarly, just because a

14  defendant may have done something that happened to help a

15  conspiracy does not necessarily make him a co-conspirator a

16  conspirator.  These are all things that you may consider in

17  deciding whether the Government has proved that a defendant

18  joined a conspiracy.  But without more, they are not enough.

19          A defendant's knowledge can be proved indirectly by

20  facts and circumstances which lead to a conclusion that he knew

21  the conspiracy's main purpose.  But it is up to the Government

22  to convince you that such facts and circumstances existed in

23  this particular case.

24          You must be convinced that the Government has proved

25  all of these elements beyond a reasonable doubt in order to

1    find a defendant guilty of the conspiracy charge.

2         Finally, to convict the defendant of the conspiracy

3    charge, the Government must convince you beyond a reasonable

4    doubt that the defendant was a member of the conspiracy charged

5    in the indictment.  If the Government fails to prove this, then

6    you must find that defendant not guilty of the conspiracy

7    charge, even if you find that he was a member of some other

8    conspiracy.  Proof that a defendant was a member of some

9    conspiracy -- other -- sorry -- proof that a defendant was a

10   member of some other conspiracy is not enough to convict.  But

11   proof that a defendant was a member of some other conspiracy

12   would not prevent you from returning a guilty verdict, if the

13   Government also proved that he was a member of the conspiracy

14   charged in the indictment.

15        Page 21, Unanimity Required on Count One:

16   Determining Amount of Controlled Substance.

17        The defendant is charged in Count One of the

18   indictment with conspiracy to possess with an intent to

19   distribute controlled substances.  If you find a defendant

20   guilty of this count, then you will be asked to determine the

21   type and quantity of the controlled substances involved in the

22   conspiracy attributable to him.  The verdict form has an

23   additional question relating to that issue.

24        If you find by unanimous agreement that the

25   Government has proved beyond a reasonable doubt that the

1   conspiracy involved the amount of a controlled substance as

2   alleged in the indictment as attributable to a defendant, then

3   please indicate this finding on the verdict form.

4        If you do not so find, you will then be asked to

5   determine whether the Government has proved a lesser quantity.

6   If you unanimously find that the Government has proved beyond a

7   reasonable doubt a lesser quantity than alleged in the

8   indictment, then please indicate that finding on the verdict

9   form.

10       In determining the type and quantity of controlled

11  substances involved in the conspiracy attributable to a

12  defendant, you must determine what type and quantity of

13  controlled substance that the defendant either personally

14  agreed, or encouraged, would be possessed with the intent to

15  distribute, or that he could have reasonably foreseen would be

16  possessed with the intent to distribute, as part of the

17  conspiracy.

18       Count Two, Possession of a Controlled Substance with

19  Intent to Distribute, 21 U.S.C. 841(a)(1).

20       The defendant is charged in Count Two with a crime of

21  possession of a controlled substance with intent to distribute.

22  Benzylpiperazine, known as BZP, methamphetamine and MDMA, which

23  is methylenedioxymethamphetamine, also known as ecstasy, are

24  controlled substances.  For you to find the defendant guilty of

25  this crime, you must find that the Government has proved each

1  and every one of the following elements beyond a reasonable
2  doubt.

3           First, on or about December 18, 2008, the defendant
4  knowingly possessed a controlled substance, specifically, a
5  substance containing a detectable amount of Benzylpiperazine,
6  also known as BZP, which is a Schedule I controlled substance;
7  a substance containing a detectable amount of MDMA,
8  methylenedioxymethamphetamine, also known as ecstasy, which is
9  a Schedule I controlled substance; and second, the defendant
10  intended to distribute these controlled substances.

11           Count Three, Possession of a Controlled Substance
12  with Intent to Distribute.  That's 21 U.S.C. Section 841(a)(1).

13           The defendant is charged in Count Three with the
14  crime of possession with intent to distribute.
15  Benzylpiperazine, also known as BZP, methamphetamine, MDMA,
16  which is methylenedioxymethamphetamine, also known as ecstasy,
17  are controlled substances.  For you to find the defendant
18  guilty of this crime, you must find the defendant has proved
19  each and every one of the following elements beyond a
20  reasonable doubt.

21           First, that on or about January 26, 2009, the
22  defendant knowingly possessed a controlled substance,
23  specifically, a substance containing a detectable amount of
24  BZP.

25           Is it okay if I just use the term BZP, MDMA and

1    ecstasy?

2            MR. NORWOOD:  Yes, your Honor.

3            THE COURT:  Is that agreeable to the defense?

4            DEFENDANT SYCHANTHA:  Yes, your Honor.

5            THE COURT:  Chemistry was never my strong suit, so

6    I'm doing the best I can.

7            Continuing.

8            Which is a Schedule I controlled substance; 500 grams

9    or more of a substance containing a detectable amount of

10   methamphetamine, which is a Schedule II controlled substance;

11   and five grams or more of methamphetamine, which is a Schedule

12   II controlled substance; and a substance containing a

13   detectable amount of MDMA, which is also known as ecstasy,

14   which is a Schedule I controlled substance.

15           And second, the defendant intended to distribute

16   these controlled substances.

17           Page 26, Unanimity Required on Count Three:

18   Determining Amount of Controlled Substance.

19           The defendant is charged in Count Three of the

20   indictment with possession with intent to -- sorry -- the

21   defendant is charged in Count Three of the indictment with

22   possession of a controlled substance with intent to distribute.

23   If you find the defendant guilty of Count Three, then you will

24   be asked to determine the quantity of the controlled substance

25   involved in the offense.  You will be provided with a special

1  verdict form for this purpose.

2          If you find by unanimous agreement that the

3  Government has proved beyond a reasonable doubt that the

4  offense involved the amount of a controlled substance as

5  alleged in the indictment, then please indicate this finding on

6  the verdict form.

7          If you do not so find, then you will be -- if you do

8  not so find, then you will be asked to determine whether the

9  Government has proved a lesser quantity.  If you unanimously

10 find that the Government has proved beyond a reasonable doubt a

11 lesser quantity than alleged in the indictment, then please

12 indicate that finding on the verdict form.

13         In determining the type and quantity of controlled

14 substances involved in the conspiracy attributable to a

15 defendant, you must determine what type and quantity of

16 controlled substance that the defendant either personally

17 agreed, or encouraged, would be possessed with intent to

18 distribute, or that he could have reasonably foreseen would be

19 possessed with the intent to distribute, as part of the

20 conspiracy.

21         Can we take a break right now?

22         MR. MARTIN:  Yes, your Honor.

23         THE CLERK:  All rise.

24         (JURY OUT AT 10:25 a.m.)

25         THE CLERK:  You may be seated.

1        THE COURT:  I'm wondering if there's an issue.  As

2  I'm reading the jury instructions on Counts One and Three and

3  comparing it with the verdict form, the jury instructions

4  indicate a lesser -- the jury will be asked to determine

5  whether the Government has proved a lesser quantity.  That is

6  not reflected on the verdict form, unless I'm not correctly

7  understanding.

8        MR. MARTIN:  Court's indulgence.

9        Your Honor, the Government's position is that if as

10  the jury is going through the verdict form and answers yes, for

11  example, to Count One, but then they answer no to question 1A,

12  the 500 grams, and no to the 5 grams, by virtue of that, the

13  jury would be finding him guilty of the conspiracy but saying

14  no to the charged quantity.  So it would still be guilty but

15  there just would not be a finding as to the charged quantity.

16        So it would be --

17        THE COURT:  But, specifically, I'm looking on page

18  26, paragraph 3.

19        Mr. Steingold, any thoughts?

20        MR. STEINGOLD:  I understand the confusion, your

21  Honor.  I wish I would have questioned this language

22  beforehand, but I think that what may be necessary is for the

23  Court to show them the verdict form and explain how they would

24  come up with the answers to those questions after the not

25  guilty or guilty verdict.

1        THE COURT:  But should 3 on page 26 and 3 -- sorry.

2        MR. STEINGOLD:  I believe that the instruction should

3   say you can find that the jury found either 500 or more --

4        THE COURT:  Stay with me.

5        MR. STEINGOLD:  -- grams of a --

6        THE COURT:  Just stay with me.

7        MR. STEINGOLD:  I'm sorry.

8        THE COURT:  Preparing the agreed upon verdict form,

9   should paragraph 3 on page 21 and paragraph 3 on 26 be deleted

10  from the jury instructions?

11       Do you want a few moments to think about it?

12       MR. MARTIN:  Yes, your Honor.

13       MR. NORWOOD:  Just a moment, your Honor.

14       THE COURT:  Do you understand my concern?

15       MR. STEINGOLD:  Yes, your Honor.

16       THE COURT:  If you need to make some phone calls --

17       MR. NORWOOD:  Your Honor --

18       THE COURT:  Gentlemen, if you need to make some phone

19  calls or consult, feel free to do so.  I'm in no rush.

20       MR. MARTIN:  Thank you, your Honor.  We'll do that.

21       THE COURT:  Okay.  Let me know when you're ready.

22       MR. MARTIN:  Thank you.

23       THE CLERK:  All rise.

24       Court is in recess.

25       (Off the record at 10:30 a.m.)

 1              (Back on the record at 10:38 a.m.)

 2              THE CLERK:  All rise.

 3              THE COURT:  I'm telling you, take your time.  There's

 4    no rush on this issue.

 5              MR. NORWOOD:  Yes, your Honor.

 6              THE COURT:  So if you need more time.

 7              MR. NORWOOD:  Just a bit more, your Honor.

 8              THE COURT:  Okay.  Just let me know.

 9              MR. MARTIN:  I think we're ready.

10              (Off the record at 10:39 a.m.)

11              (Back on the record at 10:49 a.m.)

12              THE CLERK:  All rise.

13              Court is back in session.

14              THE COURT:  Okay.  So where are we at?

15              MR. MARTIN:  Your Honor, we have a proposal.

16              We have asked defense whether -- the defendant and

17    Mr. Steingold whether they concur, and it's our understanding

18    they do.

19              So if we go to page 26 of the jury instructions, we

20    believe, your Honor, that language in paragraph 3 is still

21    correct, but that the verdict form should reflect what that

22    paragraph says in referencing a lesser quantity.

23              So our proposal -- if the Court would turn to the

24    verdict form that's proposed.

25              THE COURT:  Okay.  I'm at 1A.

 1          MR. MARTIN:  Yes, 1A.

 2          Is between the yes or no for the 500 grams -- or, I

 3  should say, right underneath that, there should be another

 4  prompt that reads:  50 grams or more of a substance containing

 5  a detectable of methamphetamine, with two dashes, one for yes,

 6  one no.  And then it should proceed to the 5 grams or more of

 7  pure methamphetamine, because the reference in the jury

 8  instructions do the lesser amount than the indictment.  The

 9  indictment has the 50 -- 500 grams or more for the 10-year but

10  there is a lesser amount determination that could be made by

11  the jury, which is between 50 and 500.

12          And then the -- dive in separately, it talks about 5

13  grams of pure meth.

14          So that, we believe, would solve the issue and

15  correspond to the jury instructions.

16          That same addition, if you will, would have to be

17  added to question 3A for the same reasons articulated.

18          THE COURT:  Yes, sir?

19          MR. STEINGOLD:  I've got an issue with that, because

20  based on the language in the instructions, if you find the

21  Government has proved beyond a reasonable doubt a lesser

22  quantity than alleged in the indictment, then indicate that

23  finding on the verdict form, it suggests to the jury that they

24  should find the 50 or more.  It doesn't tell them that they can

25  find less than 50.

1        MR. MARTIN:  No, your Honor.  And perhaps I didn't

2   articulate this well.

3        That second prompt we would add in there would have a

4   yes or no.

5        THE COURT:  So stay with me.

6        Paragraph 3 on 21 and paragraph 3 on page 26, as I

7   read it to the jury, is okay.  It's just that we need to tweak

8   the verdict form on Count One and the verdict form on Count

9   Three, is that correct.

10        MR. MARTIN:  Yes.

11        THE COURT:  Mr. Steingold, is that correct?

12        MR. STEINGOLD:  Yes, your Honor.

13        THE COURT:  Well, then let's continue the tweaking to

14   why we get -- both of us get on the same page.

15        MR. STEINGOLD:  But I think that the easiest way to

16   explain this confusing language, because even with the change,

17   I think it could be confusing, is if the Judge, and I know

18   you'll do it at the end of the instructions, but perhaps it

19   could be done now, if you could just show them the verdict form

20   and explain how they go about making that determination.

21        THE COURT:  Well, I'm agreeable to reviewing the

22   verdict form with the jury, but I think both of you need to

23   agree upon what that verdict form is going to look like with

24   Count One and Count Three.

25        MR. MARTIN:  Your Honor, I'm trying to page through

1  the jury instructions now.  I believe the jury instructions do

2  -- yes, I'm looking at page 44.

3          To your Honor's point, we do need to fix the verdict

4  form.

5          THE COURT:  I'm trying to layout a very simple issue.

6  The jury instructions are fine.

7          What needs to be tweaked is the verdict form.

8          Is that the issue?

9          MR. MARTIN:  Partially.

10         And I do want to give you a yes answer.  Yes as to

11  the pages you cited, 21 and 26.  But on page 44, as part of the

12  jury instructions, it has you look at the verdict form and read

13  out loud to the Court -- to the jurors what the verdict form

14  is.

15         So that verdict form that is embedded in your jury

16  instructions, are in the jury instructions, is wrong because we

17  have to fix it.

18         THE COURT:  I know that.  And that -- that's the

19  verdict form.  Clearly, that was going to be pulled because

20  it's not correct.

21         MR. MARTIN:  Correct, your Honor.

22         THE COURT:  So let's step back and redefine the

23  issue.

24         The jury instructions are fine.  What needs to be

25  corrected is the verdict form, is that correct?

1          MR. STEINGOLD:  Yes, your Honor.

2          THE COURT:  Is that correct?

3          MR. MARTIN:  Yes, your Honor.

4          THE COURT:  If it's not correct, let me know.

5          MR. MARTIN:  It's not correct, your Honor.

6          So the verdict form is embedded into your -- into the
7   instructions.  And then you give instructions after that.

8          So we will have to fix the jury verdict form.

9          But because we have then taken the jury form and put
10  it into your instructions, we'll also have to fix it there.  So
11  yes as to we can do that.

12          So yes, your Honor, we can fix it.

13          THE COURT:  I had just pulled pages 45, 46 and 47 and
14  48, which are the verdict form.

15          My understanding, we shall keep -- delete paragraph 2
16  on page 48 but keep verdict form limited to charges against
17  defendant on page 48.

18          MR. MARTIN:  Yes, your Honor.

19          Your Honor, if I heard you correctly, there is that
20  last paragraph on 48 that the Court will be keeping.

21          THE COURT:  So 45, 46, 47, I pulled out of the jury
22  instruction packet, and pull out of the jury instruction packet
23  that the jury has that has not -- I haven't gotten that far
24  yet.

25          And we'll keep page 48, deleting the top paragraph 2,

1  and continuing with verdict limited to the charges against this

2  defendant.

3      MR. STEINGOLD:  Your Honor, I'm thinking about how

4  the language in the instructions at page 21 for Count One, and

5  same paragraph for Count Three, could be changed to make it

6  more understandable to the jury.

7      It occurs to me that if we say -- in part three, if

8  you do not so find, you will then be asked to determine whether

9  the Government has proved the lesser quantity.

10      If you unanimously find that the Government has

11  proved beyond a reasonable doubt that there was at least 50

12  grams of a substance containing a detectable amount of

13  methamphetamine, indicate by answering yes on the verdict form.

14      If you find that they have not proved 50, then simply

15  --

16      THE COURT:  You know what?  I've had several of these

17  cases with the U.S. Attorney's Office, and it's pretty much

18  standard jury instructions and standard verdict form for this

19  type of case that you're office already has.  It's not --

20  there's no need to recreate the wheel.  The verdict form does

21  not reflect the jury instructions, it appears.  It needs to.

22      So let's get it done.

23      Mr. Steingold is there.  Let's get it done.

24      THE CLERK:  All rise.

25      THE COURT:  Mr. Martin, you've brought up -- I was

1   under the impression the jury instructions were fine.  I heard

2   Mr. Steingold say they were fine.  The only issue was the

3   verdict form.

4           You brought up last several pages of the -- certain

5   pages at the end of the jury instruction packet, which was the

6   attached verdict form.  It would seem to me all we would have

7   to do is remove that.

8           So, right now, we have a rather confused record that

9   is something I don't want to have right now.  And we need to

10  have a clear record.  So all of us -- in particular, the Court

11  of Appeals -- understands what we're doing, how we arrived at

12  the jury instructions that ultimately are going to be

13  concluded, the reading of which will be concluded to the jury.

14          Again, this is not brain surgery.  Your office has

15  pretty much standard verdict forms on this.  And jury

16  instructions, there's nothing unusual about the charge to this

17  jury.

18          Here's the verdict form that I have that was provided

19  to me, agreed upon earlier by both parties, which needs to be

20  tweaked.  And the jury instruction packet, which both parties

21  agreed before I started reading the jury instructions, were

22  supposed to be read to the jury, and I'm handing what I

23  understand should be read to the jury with a tweaked verdict

24  form.

25          So I'll hand it to you, Mr. Steingold.

```
1              Figure it out.

2              MR. MARTIN:  Yes, your Honor.

3              THE COURT:  Alex, why don't you clip the jury

4    instructions there?

5              THE COURT:  Clip the jury instructions that I have

6    and why don't you clip them?

7              And again, I pulled out the verdict form sections,

8    which were 45, 46 and 47.

9              THE CLERK:  Court is in recess.

10             (Off the record at 11:02 a.m.)

11             (Back on the record at 11:03 a.m.)

12             THE COURT:  When I'm reviewing the jury instructions

13   and the verdict form, I might want to look at the indictment.

14             MR. MARTIN:  All right.

15             (Off the record at 11:03 a.m.)

16             (Back on the record at 11:54 a.m.)

17             THE COURT:  We're in the process of revising the

18   verdict form as to Count One and Count Three, is that correct?

19             MR. NORWOOD:  That's correct, your Honor.

20             MR. MARTIN:  Yes, your Honor.

21             MR. STEINGOLD:  Yes, your Honor.

22             THE COURT:  And it's my understanding that we have an

23   agreement as to what Count One and Count Three should look

24   like, is that correct?

25             MR. MARTIN:  Yes, your Honor.
```

1              MR. STEINGOLD:  Yes, your Honor.

2              The record should reflect that the Court specifically

3    asked Mr. Sychantha if he agreed with the verdict form, and he

4    said yes.

5              THE COURT:  Is that true?

6              DEFENDANT SYCHANTHA:  Yes.

7              THE COURT:  Okay.  So we're re-typing the verdict

8    forms as to Count One, Count Two and Count Three right now.

9              And as you know, the jury -- each member of the jury

10   has a jury instruction packet.

11             And I stopped reading after --

12             MR. STEINGOLD:  I believe it was page 24, your Honor.

13             THE COURT:  No, no.  I think I stopped reading after

14   26.

15             And so I have not read pages 45, 46 and 47 to the

16   jury.  And I'm going to pull those pages out of the jury

17   instruction packet and then cross out the first paragraph on

18   page 48, paragraph 2, is that correct?

19             MR. MARTIN:  Yes, your Honor.

20             DEFENDANT SYCHANTHA:  Yes, your Honor.

21             THE COURT:  Okay.  So I'm going to do that right now.

22             So, Alex, why don't you bring it packet-by-packet and

23   I'll do it?

24             MR. MARTIN:  Your Honor, there's one extremely

25   trivial deletion on page 35 that we'd ask the Court to make as

1    well.

2            THE COURT:  I know.  I was going to have the jury

3    cross that out.  You're talking about Jaclyn Iera.

4            MR. MARTIN:  Yes.  Thank you.

5            THE COURT:  I got that.

6            MR. MARTIN:  Okay.

7            THE COURT:  And do we have something to re-staple?

8            (Off the record at 11:56 a.m.)

9            (Back on the record at 12:16 p.m.)

10           THE COURT:  Yes, sir?

11           MR. MARTIN:  Your Honor gave us an easy task and we

12   could not complete it.

13           We got a verdict form that was different than what

14   the Court had directed us to do and the --

15           THE COURT:  Whoa, whoa.  I didn't direct you.

16           MR. MARTIN:  I'm sorry.

17           What the parties had agreed to, but we don't have the

18   right verdict form, and we will not have it unless, I think,

19   one of us goes over there and makes sure that we get the right

20   one.  And unfortunately, that's going to take some time.

21           And I don't know if it's a recommendation, your

22   Honor, as much as it pains us and is not fair to the jury, is

23   that the Court consider breaking for the day so that we can get

24   this fixed.

25           THE COURT:  My thought was to read through page 41,

1    then the verdict form is not an issue.

2              MR. MARTIN:  Fine with us, your Honor.  Thank you.

3              THE COURT:  Agreeable to the defense?

4              And what I do -- I mean, this is what I normally do

5    is, generally with these jury instructions, I'll read the jury

6    instructions, and then after closing arguments, I usually start

7    with a series that starts with duty to deliberate.  And that's

8    what I can do here today, which is my normal practice.

9              MR. MARTIN:  Sounds good, your Honor.

10             MR. STEINGOLD:  Anything we can do to speed this up,

11   your Honor, I agree with the Court's decision.

12             THE COURT:  Sir, is that okay with you?

13             DEFENDANT SYCHANTHA:  Yes, your Honor.

14             THE COURT:  All right.  That's the game plan.

15             But before anybody actually leaves, we're going to

16   have a verdict form here that we all agree upon, which we have

17   it, just haven't been typed yet.

18             Okay.  Did you do the last one?

19             THE CLERK:  Still three more.

20             (Off the record at 12:19 p.m.)

21             (Back on the record at 12:27 p.m.)

22             THE COURT:  Okay.  I think we're ready to proceed.

23   I'll give you -- in my right hand, I believe I have the jury

24   instructions that you wish me to read to the jury, is that

25   correct?

1          MR. MARTIN:  Yes, your Honor.

2          DEFENDANT SYCHANTHA:  Yes, sir.

3          THE COURT:  Either one of you want to take one last

4    look at it before I start reading?

5          MR. MARTIN:  Your Honor, I will.

6          THE COURT:  Why don't you review it with the

7    defendant, just make sure we're all on the same page.

8          MR. MARTIN:  Thank you, your Honor.

9          (Off the record at 12:28 p.m.)

10          (Back on the record at 12:30 p.m.)

11          THE COURT:  All good?

12          MR. MARTIN:  Yes, your Honor.

13          THE COURT:  All good?

14          DEFENDANT SYCHANTHA:  Yes, your Honor.

15          THE COURT:  And I'm going to start at page 27, is

16    that correct?  Is that correct?

17          DEFENDANT SYCHANTHA:  Yes, your Honor.

18          THE COURT:  All right.  So, Jen, whenever the jury is

19    ready.

20          MR. STEINGOLD:  Your Honor, had you finished reading

21    page 26?

22          THE COURT:  I thought I did.

23          I can read it over again.

24          MR. NORWOOD:  You did conclude that page, your Honor.

25          THE COURT:  April, can you --

1          COURT REPORTER:  You did complete it.

2          THE COURT:  Okay.

3          THE CLERK:  All rise for the jury.

4          (JURY IN AT 12:31 p.m.)

5          THE CLERK:  Please be seated.

6          THE COURT:  So I'm going to continue reading the jury

7     instructions to you.

8          Could we start -- could you please turn to page 27

9     and let me know when you're ready?

10         All right.  Now, some of the people who may have been

11    involved in these events are not on trial.  This does not

12    matter.  There is no requirement that all members of a

13    conspiracy be charged and prosecuted or tried together in one

14    proceeding.  Nor is there any requirement that the names of the

15    other conspirators be known.  An indictment can charge a

16    defendant with a conspiracy involving people whose names are

17    not known, as long as the Government can prove that the

18    defendant conspired with one or more of them.  Whether they are

19    named or not does not matter.

20         Page 28, Actual and Constructive Possession.

21         Next, I want to explain something about possession.

22    The Government does not necessarily have to prove that the

23    defendant physically possessed the controlled substances for

24    you to find him guilty of this crime.  The law recognizes two

25    kinds of possession - actual possession and constructive

1  possession.  Either one of these, if proved by the Government,

2  is enough to convict.

3         To establish actual possession, the Government must

4  prove that the defendant had direct, physical control over the

5  controlled substances and knew that he had control of it.

6         To establish constructive possession, the Government

7  must prove that the defendant had the right to exercise

8  physical control over the controlled substances, and knew that

9  he had this right, and that he intended to exercise physical

10  control over the controlled substances, either directly or

11  through other persons.

12         For example, if you left something with a friend

13  intending to come back later and pick it up or intending to

14  send someone else to pick it up for you, you would have

15  constructive possession of it while it was in the actual

16  possession of your friend.

17         But understand that just being present where

18  something is located does not equal possession.  The Government

19  must prove that the defendant had actual or constructive

20  possession of the controlled substances, and knew that he did,

21  for him -- for you to find him guilty of this crime.  This, of

22  course, is all for you to decide.

23         Page 30, Joint Possession.

24         One more thing about possession.  The Government does

25  not have to prove that the defendant was the only one who had

1   possession of the controlled substances.  Two or more people

2   can together share actual or constructive possession over

3   property.  And if they do, both are considered to have

4   possession as far as the law is concerned.

5           But remember that just being present with others who

6   had possession is not enough to convict.  The Government must

7   prove that the defendant had either actual or constructive

8   possession of the controlled substances, and knew that he did,

9   for you to find him guilty of this crime.  This, again, is all

10  for you to decide.

11          Although the indictment charges that a statute was

12  violated by acts that are connected by the word "and," it is

13  sufficient if the evidence establishes a violation of the

14  statute by any one of the acts charged.  Of course, this must

15  be proved beyond a reasonable doubt.

16          Page 32, Inferring Required Mental State.

17          Next, I want to explain something about proving a

18  defendant's state of mind.

19          Ordinarily, there is no way that a defendant's state

20  of mind can be proved directly because no one can read another

21  person's mind and tell what that person is thinking.

22          But a defendant's state of mind can be proved

23  indirectly from the surrounding circumstances.  This includes

24  things like what the defendant said, what the defendant did,

25  how the defendant acted, and any other facts or circumstances

1   in evidence that show what was in the defendant's mind.

2          That concludes --

3          We're on page 33.

4          That concludes the part of my instructions explaining

5   the elements of the crime.  Next, I will explain some rules

6   that you must consider -- next, I will consider some rules that

7   you must use in considering some of the testimony and evidence.

8          Page 34.

9          A defendant has an absolute right not to testify or

10  present evidence.  The fact that he did not testify or present

11  any evidence cannot be considered by you in any way.  Do not

12  even discuss it in your deliberations.

13         Remember that it is up to the Government to prove the

14  defendant guilty beyond a reasonable doubt.  It is not up to

15  the defendant to prove that he is innocent.

16         Opinion Testimony.

17         Everyone got their pencil or pen?

18         In the first paragraph, you're going to see the name

19  Jaclyn Iera.

20         Everyone see the name?

21         She did not testify, so cross her name out, okay?

22         Okay.  Again, page 35, Opinion Testimony.

23         You have heard the testimony of narcotics trafficking

24  witness Daniel Christensen and chemists Heather Miller, Carrie

25  Gallagher, Alexandra Ambriz, Timothy Anderson, who testified as

1 opinion witnesses.

2           You do not have to accept the opinions of any of

3 these witnesses.  In deciding how much weight to give them, you

4 should consider each witness' qualifications and how he or she

5 reached his or her conclusions.  Also consider the other

6 factors discussed in these instructions for weighing the

7 credibility of witnesses.

8           Remember that you alone decide how much of a witness'

9 testimony to believe and how much weight it deserves.

10           Remember -- again, it repeats itself.

11           Remember that you alone decide how much of a witness'

12 testimony to believe and how much weight it deserves.

13           Page 36.

14           You have heard the testimony of John Tetreau.  You

15 have also heard that the Government promised to and did move

16 for a reduction in his sentence in exchange for his

17 cooperation.

18           It is permissible for the Government to make such a

19 promise.  But you should consider Mr. Tetreau's testimony with

20 more caution than the testimony of other witnesses.  Consider

21 whether his testimony may have been influenced by the

22 Government's promise.

23           Do not convict the defendant based be based on the

24 unsupported testimony of such a witness, standing alone, unless

25 you believe his testimony beyond a reasonable doubt.

1           Page 37, Testimony of an Accomplice.

2           You've heard the testimony of Tammie Thompson, Asad

3  Malik, Ron Quizon, John Tetreau, Loren Omen, Jacob Webb -- did

4  -- Jacob Webb did not testify, correct?

5           MR. NORWOOD:  Correct, your Honor.

6           THE COURT:   Strike the name Jacob Webb.

7           And Dante Shavers.

8           You have also heard that they were involved in the

9  same crimes that the defendant is charged with committing.  You

10  should consider their testimony with more caution than the

11  testimony of other witnesses.

12           Do not convict the defendant based on the unsupported

13  testimony of such a witness, standing alone, unless you believe

14  that the witness' testimony -- unless you believe the witness'

15  testimony beyond a reasonable doubt.

16           The fact that such a witness has pled guilty to a

17  crime is not evidence that the defendant is guilty, and you

18  cannot consider this against the defendant in any way.

19           Page 38, Transcription of Recordings.

20           You have heard some recordings that were received

21  into evidence, and you were shown some written transcripts of

22  these recordings.

23           Keep in mind that the transcripts are not evidence.

24  They were given to you only as a guide to help you follow what

25  was being said.  Only the recordings themselves are the

1   evidence.  If you noticed any differences between what you

2   heard on the recordings and what you read in the transcripts,

3   you must rely on what you heard, not what you read.  And if you

4   could not hear or understand certain parts of the recordings,

5   you must ignore the transcripts as far as those parts are

6   concerned.

7           So, that's as far as we're going to go today, all

8   right?  Tomorrow, we're going to start with the closings at

9   9:00, all right?  At 9:00.  And then when the closings are

10  concluded, I will finish reading the jury instruction packet to

11  you, starting at page 39, okay?

12          Everyone understand the procedure?

13          JURORS:  Yes.

14          THE COURT:  And again, you can't discuss the case,

15  correct?

16          JURORS:  Correct.

17          THE COURT:  All right.  So enjoy your afternoon and

18  we'll see you upstairs at 8:30, and we'll start with the

19  closings right around 9:00.

20          THE CLERK:  All rise for the jury.

21          (JURY OUT AT 12:42 p.m.)

22          THE COURT:  They want to know the schedule as far as

23  tomorrow as far as leaving.

24          THE COURT:  They'll be in deliberations.

25          THE CLERK:  All day?

1          THE COURT:  All day.

2          THE CLERK:  You may be seated.

3          THE COURT:  So should there be a conviction, possibly

4   there might be an issue with respect to Mr. Sychantha's access

5   to -- or it could be raised, right?  You can also raise

6   whatever you want on appeal.

7          So I want to hand the Government and the defense a

8   series of emails.

9          MR. MARTIN:  May I approach, your Honor?

10         THE COURT:  Mr. Furtaw will hand it to you.

11         A series of emails that may shed some light on the

12  issue of access while at Livingston County Jail.

13         Let me see that document back again.

14         So a little update.  So, as you can see, we've been

15  -- the Marshal service has been in contact, again, with

16  Sergeant Neil.  And Sergeant Neil sent an email this morning at

17  7:40 -- 7:54 a.m. and indicates:  I hope all is well.  The

18  defendant was brought back from court and copies were made for

19  him for new material he received in court today.  Defendant was

20  asked what time he needed his discovery material and he opted

21  not to view anything on the laptop.  He informed the deputies

22  that he had -- he -- that all he needed was the copies he had

23  in possession to prepare for court today.

24         And then in an earlier email in this chain, it's

25  noted -- and this is an email from Lieutenant Asquith to the

Page 72

1    Marshals, Tuesday, April 15th, at 3:00 p.m., noting:  The

2    law library is in the kiosk in the units that he can access

3    any time that he is in the day room.  Again, please let me

4    know.  Thank you.

5              So I just wanted to share the emails between the

6    Marshal and Livingston that we received regarding the issue

7    of access, okay?

8              MR. NORWOOD:  And, your Honor, if the Court will

9    allow, the Government just wants to make a brief record as

10   it relates to discovery and access with the defendant.

11             THE COURT:  Sure.

12             MR. NORWOOD:  Your Honor, just for the Court --

13   and this is more if the Court of Appeals had this issue.

14             On May the 12th of 2023, the Court appointed

15   Mr. David Lee to represent the defendant.  At that time,

16   pursuant to orders of the Court, we did provide discovery to

17   the defendant and he had access with his counsel.

18             And on November the 15th of 2023, Mr. Steingold

19   was appointed.  At that point, he also had full access to

20   the discovery that the Government had to provide, with the

21   exception of Jencks and the trial.

22             On September the 20th of 2024, the defendant

23   decided to represent himself.  And throughout this period of

24   time, the Government has made available his discovery.

25             And so if there is any question as to whether he's

Page 73

1   had access, the Government has provided it since May 12th,

2   2023, pursuant to the discovery order that was required.

3           THE COURT:  Okay.  Obviously, I need you to stick

4   around just so that we can firm up the verdict form, okay?

5           MR. NORWOOD:  Absolutely, your Honor.

6           THE CLERK:  All rise.

7           (Off the record at 12:50 p.m.)

8           (Back on the record at 1:11 p.m.)

9           THE CLERK:  All rise.  Court is back in session.

10          THE COURT:  All right.  Do I have the verdict form

11  that you wish the jury to consider?

12          MR. MARTIN:  Yes, your Honor.

13          DEFENDANT SYCHANTHA:  Yes, your Honor.

14          MR. STEINGOLD:  Your Honor, I've reviewed this

15  with Mr. Sychantha, and he's in agreement.

16          THE COURT:  Very good.

17          But there's a couple typos.

18          So if you look at page -- you have 51 at the

19  bottom, perhaps it should be 45, 46, and the last one 47.

20  And then were you at 54, 47A?

21          MR. NORWOOD:  Yeah.

22          THE COURT:  All right.

23          MR. MARTIN:  Yes, your Honor.

24          THE COURT:  Because we're going to give that to

25  the jurors.  The original form should not have those

Page 74

1   numbers.  The one that -- foreperson will receive what the

2   original jury instruction pack -- should be one of four, two

3   of four, three of four, and four of four, okay, so there's

4   no issue regarding the verdict form.

5           And then in question 1A, under Count One, with

6   respect to Count One:  Did the offense involve at least 500

7   grams or more, okay, and then if you jump over to Count

8   Three, it reads:  Did the offense involve at least 500 grams

9   of a substance?  It doesn't have the term or more.  You

10  might want to have the consistency, if that's agreeable to

11  the defense.

12          MR. STEINGOLD:  It's agreeable.  They can take out

13  the "or more" or put it in Count Three.  I think it reads

14  the same.

15          THE COURT:  Right.  I just think it should be

16  consistent.

17          MR. NORWOOD:  Your Honor, if we just took out the

18  "or more" of 1A.

19          THE COURT:  Yeah, maybe you might want to do that

20  because it's more consistent with the indictment.

21          MR. STEINGOLD:  I agree.

22          THE COURT:  And this is kind of trivial, but with

23  respect to Count Two, possession with intent to distribute a

24  controlled substance; not substances, okay?

25          So I guess with question 1A, take out the "or

Page 75

1    more;" Count Two, question two, delete substances.  And

2    change the numbering for the packet that the jury is going

3    -- for the verdict form that the jury is going to receive.

4           And then for the foreperson, the actual jury

5    verdict is going to be one of four, two of four, three of

6    four, and four of four, okay?

7           MR. NORWOOD:  Yes, your Honor.

8           THE COURT:  Are we all good?

9           MR. NORWOOD:  Yes, your Honor.

10          THE COURT:  Are you clear?

11          MR. NORWOOD:  Yes, your Honor.

12          MR. STEINGOLD:  Yes, your Honor.

13          THE COURT:  Okay.  So we're in agreement on the

14   verdict form, which is wonderful.

15          And just make the -- change the grammar a little

16   bit, okay?

17          MR. MARTIN:  Thank you, your Honor.

18          MR. NORWOOD:  Thank you, your Honor.

19          THE COURT:  And then email it to me or Ms. McCoy,

20   and we will make the copies for the jurors and make sure

21   they get it tomorrow.

22          Again, run through it one more time.

23          And the jury instruction packet, don't redo the

24   jury instruction packet, okay?  Just make a new verdict

25   form, first page, 45; second page, 46; third page, 47;

Page 76

1   fourth page, 47A; Count One, question 1A, get rid of "or

2   more."

3           Then, Count Two, substance; not substances.

4           And then with the foreperson's verdict form,

5   again, one of four, two of four, three of four, four of

6   four.

7           Any questions?

8           MR. NORWOOD:  No, your Honor.  Thank you.

9           THE COURT:  Okay.  All good?

10          MR. STEINGOLD:  All good, your Honor.

11          MR. NORWOOD:  Yes.

12          THE COURT:  Okay.  We'll see you tomorrow morning

13  about 8:30.

14          MR. NORWOOD:  Sounds good.

15          THE COURT:  The courtroom will be open early if

16  you guys want to set up.

17          MR. MARTIN:  Thank you, your Honor.

18          THE CLERK:  Court is in recess.

19          (PROCEEDINGS CONCLUDED AT 1:18 p.m.)

20                      * * * * *

21              **C E R T I F I C A T I O N**

22      I certify that the foregoing is a correct transcription

23  of the record of proceedings in the above-entitled matter.

24  **s/ April A. Kurtz, CSR-7347, RPR, FCRR      10/31/2024**
    April A. Kurtz, CSR-7347, RPR, FCRR           Date
25  Official Court Reporter