Lafler Hearing – 09/20/2024

1

```
                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
                            SOUTHERN DIVISION
```

**UNITED STATES OF AMERICA,**

                    Plaintiff,

    vs.                              Case No. 05-81165

**KHAOPHONE SYCHANTHA,**

                    Defendant.
_____/

                    **LAFLER HEARING**
          **BEFORE THE HONORABLE SEAN F. COX**
             United States District Judge
        Theodore Levin United States Courthouse
             231 West Lafayette Boulevard
                   Detroit, Michigan
                Friday, September 20, 2024

**APPEARANCES:**

**FOR THE PLAINTIFF:**

                         **JASON DORVAL NORWOOD**
                         United States Attorney's Office
                         211 W. Fort Street
                         Suite 2001
                         Detroit, Michigan 48226
                         313.226.9587
                         313.226.9168

FOR THE DEFENDANT:

                         **KHAOPHONE SYCHANTHA**
                         IN PRO PER
                         **DAVID S. STEINGOLD**
                         (STANDBY COUNSEL)
                         Law Offices of David S. Steingold, PLLC
                         30300 Northwestern Highway
                         Suite 111
                         Farmington Hills, Michigan 48334
                         313.962.0000


                      -      -      -
           To obtain a certified transcript, contact:
            April A. Kurtz, CSR-7347, RPR, FCRR
                   www.transcriptorders.com

Lafler Hearing – 09/20/2024
TABLE OF CONTENTS

MATTER                                                          PAGE

**Lafler Hearing........................................ 3**

Certificate of Reporter............................ 24

1    Detroit, Michigan

2    Friday, September 20, 2024

3    2:39 p.m.

4                           * * *

5              THE CLERK:  All rise.

6              The United States District Court for the Eastern

7    District of Michigan is in session.  The Honorable Sean Cox

8    presiding.

9              Please be seated.

10             The Court calls Case Number 05-81165, United States

11   of America versus Sychantha, et al.

12             Counsel, can I have appearances, please?

13             MR. NORWOOD:  Good afternoon, your Honor.  Jason

14   Norwood on behalf of the United States.

15             MR. STEINGOLD:  Good afternoon, your Honor.  David

16   Steingold on behalf of Mr. Sychantha, who is seated to my

17   right.

18             THE COURT:  Good afternoon.  Please have a seat.

19             We held a plea hearing on February 9th.  And, at that

20   time, counsel for the Government stated that a plea offer had

21   been made to Mr. Steingold in December 2023, which was rejected

22   by the defendant in January 2024.

23             Counsel for the Government also stated that a second

24   plea offer had been made to Mr. Steingold the week of February

25   9th, which also had been rejected.

4

1        Then, per the transcript, the following conversation

2    between me and the defendant occurred.

3        From me:

4        Question:  And, sir, did your attorney,

5    Mr. Steingold, present two plea offers with Rule 11s to you?

6        Defendant answered yes.

7        The Court:  After reviewing and discussing those

8    offers from the Government, did you decide to reject those

9    offers?

10        Defendant:  Yes.

11        The Court:  And is it your desire to exercise your

12    constitutional right and proceed to trial?

13        The defendant:  Yes.

14        The Court:  Okay.  And did Mr. Steingold thoroughly

15    explain the offers and the consequences of those offers to you

16    and the consequences of rejecting those offers?

17        The defendant:  Yes.

18        The Court:  And did he explain to you what guidelines

19    are and the significance of guidelines and sentencing?

20        Yes.  The defendant answered yes.

21        The Court:  And did he explain to you the different

22    potential sentences you could possibly receive by pleading or

23    going -- or by proceeding to trial?

24        Yes.

25        And I said -- the Court:  Up to this point, do you

1    have any questions for Mr. Steingold or the Court?

2                No.

3                And the Court said:  Okay.  Very good.

4                And then, at that time, I realized the case had been

5    designated -- or had been requested that this case proceed by

6    way of bench trial.  And when I realized that, I referred it to

7    the MJ.  Subsequently, I ruled that this case would be tried by

8    a jury and that I would conduct -- continue with a Lafler-type

9    proceeding, which is what we're doing today.  And, of course,

10   trial is set for October 10th.

11               MR. NORWOOD:  Correct, your Honor.

12               THE COURT:  So, sir, is it still your desire to

13   proceed to trial?

14               THE DEFENDANT:  Yes.

15               THE COURT:  And it's my understanding you have

16   received at least two plea offers from the Government, is that

17   correct?

18               THE DEFENDANT:  Yes.

19               THE COURT:  Have there been any further plea offers

20   since we were together on this issue on February 9th?

21               MR. NORWOOD:  No additional plea offers, your Honor.

22               MR. STEINGOLD:  That's correct, your Honor.

23               THE COURT:  Okay.  So why don't we put on the record,

24   so it's absolutely clear and there's no issue down the road,

25   what the offers were?  What was the first offer and what was

1    the second offer?

2              MR. NORWOOD:  Absolutely, your Honor.

3              As the Court has explained, there were offers made in

4    this case.  Just to make the record straight, there was three

5    offers that were sent to Mr. Steingold, one on December the

6    13th, one on December the 27th with slight modifications, and

7    then one on February the 6th.

8              The essential terms of that plea agreement, would you

9    like me to go over those, your Honor?

10             THE COURT:  Yeah, go over -- so the, you know, record

11   is clear, exactly what has been -- was offered to him.

12             MR. NORWOOD:  Thank you, your Honor.

13             Pursuant to the Rule 11 plea agreement that was most

14   recently offered in February, the defendant would plead not

15   guilty --

16             THE COURT:  Start with the first one.

17             MR. NORWOOD:  The first one, your Honor, had the same

18   plea agreements as far as what he would be pleading to and what

19   the statutes would be.  The only substantive changes that took

20   place in the plea agreement that was subsequent was --

21             THE COURT:  Sir, you have to help me out.  You've got

22   to lay it all on the record.

23             MR. NORWOOD:  Sure.

24             THE COURT:  What was the -- what the offer was, plead

25   to what.

1          MR. NORWOOD:  Sure.

2          All plea offers had the following terms:  The

3   defendant would agree to plead guilty to the lesser included

4   offense of Count One and Count Two, as charged in the

5   superseding indictment, which charges the defendant with

6   conspiracy to possess with the intent to distribute a

7   controlled substance in violation of 21, United States Code

8   841(a)(1)(B)(i)(b) and 846, and possession with the intent to

9   distribute a controlled substance in violation of 21, United

10  States Code, 841(a)(1) and (b)(1)(C).

11         The factual basis for the agreement was mentioned in

12  paragraph five of the Rule 11 plea agreement, and it's stated

13  as follows:

14         The parties agree that the following facts are true,

15  accurately describe the defendant's role in the offenses and

16  provide a sufficient factual basis for the guilty plea.

17         Beginning as early as 2003 and continuing through or

18  on about January of 2011, within the Eastern District of

19  Michigan, Southern Division and elsewhere, defendant knowingly

20  and voluntarily agreed to possess with the intent to distribute

21  N-Benzylpiperazine, also known as BZP, and

22  3,4-methylenedioxymethamphetamine, also known as MDMA, and at

23  least 50 grams which contained a detectable amount of

24  methamphetamine.

25         In furtherance of the agreement, the defendant, David

1   Sok, Mamie Arterberry, each recruited co-contributors,

2   organized pickups and supplied large amounts of pills to

3   co-conspirators containing BZP, MDMA, including 50 or more

4   grams of pills that contained a detectable amount of

5   methamphetamine, which were later smuggled to Canada -- from

6   Canada into the United States for further distribution.

7         Under the general direction of the defendant, on

8   numerous occasions between 2003 and January of 2011, defendant

9   met with Sok, Arterberry and other co-conspirator drug and

10  money couriers and agreed to possess well over 200,000 pills,

11  which Defendant Sok and Arterberry concealed within vehicle

12  panels, gas tanks and spare tires driven by couriers.

13        The couriers then smuggled the pills from Canada into

14  the United States, and at the direction of Defendants Sok and

15  Arterberry, distributed the pills to co-conspirators in the

16  metropolitan areas of Detroit, Boston, New York, Chicago,

17  Atlanta and Chantilly, Virginia, as well as elsewhere.

18        Throughout the conspiracy, Defendant Sok worked with

19  several co-conspirators and at least six individuals who served

20  as couriers, smuggling the pills across the United

21  States/Canadian border.  One of the couriers was Donte Shavers.

22  Defendant would directly -- would direct Arterberry to send the

23  courier to Canada to pick up thousands of pills from him, which

24  contained illegal controlled substances, including detectable

25  amounts of methamphetamine, BZP and MDMA.

Lafler Hearing - 09/20/2024

1      Defendant would knowingly and intentionally possess

2   and distribute thousands of pills to these couriers.  Defendant

3   would then have Arterberry receive the delivery from the

4   courier and store the pills at Arterberry's residence for

5   further distribution, both within and outside of Detroit.

6      On or about December 18th of 2008, Shavers traveled

7   to Windsor, Ontario, Canada, and met with the defendant to

8   obtain a quantity of pills containing a detectable amount of

9   BZP and MDMA.  Defendant and Shavers traveled to a different

10  location and picked up approximately 104,000 pills containing a

11  detectable amount of BZP and MDMA.

12      Defendant and Shavers then loaded the pills into the

13  side panels of Shavers' vehicle.  At that point, Defendant

14  Shavers -- and Shavers knowingly and intentionally possessed

15  the pills with the intent to distribute them.  Defendant then

16  directed Shavers back to the United States to meet with

17  Arterberry to drop off the pills to Arterberry.  This was the

18  fourth time that Shavers traveled and met with defendant to

19  smuggle thousands of pills containing illegal controlled

20  substances into the United States.

21      Upon re-entry, via the Detroit Ambassador Bridge in

22  Detroit, Michigan --

23      THE COURT:  I apologize.

24      MR. NORWOOD:  Sure.

25      THE COURT:  I didn't want you to read the whole Rule

Lafler Hearing - 09/20/2024

1   11.

2          MR. NORWOOD:  Sure.

3          THE COURT:  I was just interested in what the offer

4   was, a plea to X.

5          What were the sentencing consequences?

6          MR. NORWOOD:  Sure.

7          THE COURT:  Okay.  Sorry about that.

8          MR. NORWOOD:  Okay.  And I'll go to that, your Honor.

9          So, based on the potential plea of the lesser

10  included of Count One and Count Two, the maximum penalties

11  would have been as follows:

12         For Count One, the mandatory minimum would have been

13  five years' imprisonment and the following maximum penalties:

14  Not more than 40 years' imprisonment without the possibility of

15  parole, a fine of not more than five million dollars, a

16  mandatory special assessment of $100, and a term of supervised

17  release of at least four years, and up to a lifetime of

18  supervised release.

19         The maximum penalties for Count Two, no mandatory

20  minimum offense and imprisonment for the following maximum

21  penalties, not more than 20 years' imprisonment without the

22  possibility of parole, a fine of not more than one million

23  dollars, a mandatory special assessment of $100, and a term of

24  supervised release of at least three years, and up to three --

25  up to a lifetime of supervised release.

Lafler Hearing - 09/20/2024

1      THE COURT:  Was that the last offer or the first

2  offer?

3      MR. NORWOOD:  All offers had that specific language

4  in it.

5      THE COURT:  Okay.  And then what were the -- what

6  were the guidelines?

7      MR. NORWOOD:  Guidelines?

8      THE COURT:  Yes.

9      MR. NORWOOD:  So the guidelines --

10      THE COURT:  I know you don't have definite numbers,

11  but I just --

12      MR. NORWOOD:  Correct.

13      THE COURT:  -- what everyone believed were the

14  guidelines.

15      MR. NORWOOD:  Absolutely.

16      The estimated guidelines that were shared with

17  defense counsel and no disagreements would have been if he

18  plead guilty would be an advisory guideline in the range of 210

19  to 260 months.  However, in the plea agreement that we have,

20  there was a section B plate where the parties recommended to

21  the Court that there would be a mandatory minimum of 60 months

22  but a maximum of 134 months.

23      THE COURT:  Okay.  Was that the offer, Mr. Steingold?

24      MR. STEINGOLD:  Yes, it is, your Honor.

25      THE COURT:  And did your client reject the offer

Lafler Hearing - 09/20/2024

1   after discussing it with him?

2           THE DEFENDANT:  Yes, he did.

3           THE COURT:  Is that true, sir?

4           THE DEFENDANT:  Yes.

5           THE COURT:  And do you still reject the offer, sir?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Okay.  If he proceeds to trial, what is

8   he looking at?

9           MR. NORWOOD:  If he proceeds to trial and is

10  convicted, your Honor, the advisory guideline range would

11  elevate to 292 to 365 months.

12          THE COURT:  What about the mandatory minimums and

13  maximums?

14          MR. NORWOOD:  The mandatory minimum would then be

15  enhanced from the plea, which would be five years to ten years.

16          THE COURT:  Okay.  Is that accurate, Mr. Steingold?

17          MR. STEINGOLD:  I believe it is, your Honor.

18          THE COURT:  Did you hear what the --

19          THE DEFENDANT:  Yes.

20          THE COURT:  -- Government --

21          And do you still reject --

22          THE DEFENDANT:  Yes.

23          THE COURT:  -- the offer?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And it is -- of course, that's your

Lafler Hearing - 09/20/2024

1 right.  You have a constitutional right to proceed to trial.

2          THE DEFENDANT:  And I wanted to do -- I wanted to get

3 a new lawyer, sir.

4          THE COURT:  Okay.  But I want to -- if that's -- wait

5 until we're done with the proceeding.

6          THE DEFENDANT:  Yes.

7          THE COURT:  This proceeding.

8          THE DEFENDANT:  Yeah.

9          THE COURT:  So it's my understanding that you reject

10 the offer and that you wish to exercise your constitutional

11 right to proceed to trial, is that correct?

12          THE DEFENDANT:  Yes, yes.

13          THE COURT:  Okay.  All good.  Thank you very much.

14          MR. NORWOOD:  Thank you.

15          THE COURT:  Mr. Steingold, is there anything that you

16 wish to place on the record?

17          MR. STEINGOLD:  Nothing at this time, your Honor.

18          THE COURT:  Okay.  Very good.

19          You had something to say, sir?

20          THE DEFENDANT:  Yes.

21          I wanted to get a new lawyer because I feel that this

22 lawyer is not doing what I ask him to do.

23          THE COURT:  Well, your lawyer --

24          THE DEFENDANT:  And Mr. --

25          THE COURT:  -- is not required to do what you tell

Lafler Hearing - 09/20/2024

```
 1    him to do.
 2              THE DEFENDANT:  Yes.  I asked him to put in a motion.
 3    He won't put in a motion for me.
 4              THE COURT:  Okay.  What did I say to you the last
 5    time we were together?
 6              THE DEFENDANT:  Your Honor, I would represent myself,
 7    but I'm going to hire my own lawyer.
 8              THE COURT:  Have you?
 9              THE DEFENDANT:  Yes.
10              THE COURT:  Who is your lawyer?
11              THE DEFENDANT:  I'm going to -- like, he told me I
12    have to fire Mr. Steingold first.
13              THE COURT:  Well, I'm not sure that you have to fire
14    Mr. Steingold first.  I'm not sure a lawyer would say that to
15    you.
16              THE DEFENDANT:  Well, that's what he told me.
17              THE COURT:  Who is he?
18              THE DEFENDANT:  I talked to a couple lawyers.  They
19    told me to -- because I have a lawyer, they can't do nothing.
20              THE COURT:  Okay.  Well, I'm not sure that's
21    accurate.
22              We have an October 10 date.
23              THE DEFENDANT:  Okay.
24              THE COURT:  It's firm.
25              THE DEFENDANT:  Yeah.
```

Lafler Hearing - 09/20/2024

1          THE COURT:  It's firm.

2          THE DEFENDANT:  I'll be ready.

3          THE COURT:  Well, if you bring in a new lawyer, that

4    lawyer is going to have to be ready to proceed by October 10th.

5          THE DEFENDANT:  Yes.

6          THE COURT:  If you want to represent yourself --

7          THE DEFENDANT:  Yes.

8          THE COURT:  -- Mr. Steingold will be standby

9    counsel --

10          THE DEFENDANT:  Okay.

11          THE COURT:  -- that you may consult at any time

12    during the course of the trial.

13          Do you understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  And again, this was just thrown at me in

16    the middle of this proceeding, so just give me a moment, okay?

17          Prior to this case, have you had contact with the

18    criminal justice system?

19          MR. STEINGOLD:  In the United States, your Honor?

20          THE COURT:  Or in Canada.

21          THE DEFENDANT:  Yes.

22          THE COURT:  Okay.  What was the nature of the

23    contact?

24          MR. STEINGOLD:  Your Honor, my client had a trial in

25    Windsor on essentially the same charges.  I believe it was a

Lafler Hearing - 09/20/2024

1  conspiracy to smuggle drugs into the country.  I believe

2  Mr. Norwood would know the details of that.  I know he was

3  acquitted.

4              THE COURT:  Very good.

5              So he had a -- on a prior occasion, he's been through

6  a criminal trial with a jury?

7              MR. STEINGOLD:  Yes.

8              THE COURT:  Is that true?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And when was that trial?

11             THE DEFENDANT:  2018.

12             THE COURT:  And did you have counsel?  Did you have

13  representation?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Okay.  Have you ever studied law?

16             THE DEFENDANT:  No.

17             THE COURT:  Have you ever represented yourself in a

18  criminal action?

19             THE DEFENDANT:  No.

20             THE COURT:  Sir, do you understand the first

21  superseding indictment --

22             Which is still the current indictment, is that

23  correct?

24             MR. NORWOOD:  That's correct, your Honor.

25             THE COURT:  All right.  You're charged with Count

Lafler Hearing - 09/20/2024

1   One, conspiracy to possess with intent to distribute and

2   distribute a controlled substance.  That charge carries a

3   mandatory minimum of 10 years and that term of incarceration

4   can be up to life, as well as a fine of up to 10 million

5   dollars.  And if you're subject to one enhancement, under 21,

6   U.S.C. Section 851, based on a prior felony conviction, the

7   mandatory minimum would be 15 years and the max, life, as well

8   as a fine of up to 20 million dollars.

9          In Count Two, you're charged with possession with

10  intent to distribute a controlled substance.  That charge has a

11  term of incarceration of up to 20 years and/or a million dollar

12  fine.  If you're subject to one enhancement, under 21, U.S.C.

13  Section 851, based on a prior felony conviction, that term of

14  incarceration can be up to 30 years, as well as a fine of up to

15  two million dollars.

16         In Count Three, you're charged with possession with

17  intent to distribute a controlled substance.  That charge has a

18  mandatory minimum of 10 years.  The term of incarceration can

19  be up to life, as well as a 10 million dollar fine.  If you're

20  subject to one enhancement, under 21, U.S.C. Section 851, based

21  on a prior felony drug conviction, the mandatory minimum would

22  be 15 years, and a term of incarceration could be up to life,

23  as well as a fine of 20 million dollars.

24         Count Four, you're charged with possession with

25  intent to distribute -- you're charged with possession with

Lafler Hearing - 09/20/2024

1  intent to distribute a controlled substance.  That charge

2  brings with a term of incarceration of up to 20 years, a fine

3  of up to a million dollars.  If you're subject to one

4  enhancement, under 21, U.S.C. Section 851, based on a prior

5  felony drug conviction, that's up to 30 years' imprisonment and

6  a fine of two million dollars.

7  　　　　　You understand that you're charged with these crimes?

8  　　　　　THE DEFENDANT:  Yes.

9  　　　　　THE COURT:  And do you understand the sentencing

10  consequences?

11  　　　　　THE DEFENDANT:  Yes.

12  　　　　　THE COURT:  And for each conviction, do you

13  understand there would be a special assessment of $100?

14  　　　　　THE DEFENDANT:  Yes.

15  　　　　　THE COURT:  Counsel, what would be the terms of

16  supervised release for Counts One, Two, Three and Four?

17  　　　　　MR. NORWOOD:  So the terms of release -- supervised

18  release, your Honor, for Count One, would be four years and up

19  to life, and then for the subsequent counts, three years and up

20  to life.

21  　　　　　THE COURT:  Is that accurate, Mr. Steingold?

22  　　　　　MR. STEINGOLD:  That's correct.

23  　　　　　THE COURT:  And did you hear what the Government just

24  --

25  　　　　　THE DEFENDANT:  Yes.

Lafler Hearing - 09/20/2024

1    THE COURT:  -- regarding supervised release?

2    THE DEFENDANT:  Yes.

3    THE COURT:  Do you understand that if you're found

4  guilty of more than one of these crimes, this Court potentially

5  could order that the sentences be served consecutively; that

6  is, one after another?

7    THE DEFENDANT:  Yes.

8    THE COURT:  Do you understand that there are advisory

9  sentencing guidelines that may have an effect on your sentence

10  if you're found guilty?

11    THE DEFENDANT:  Yes.

12    THE COURT:  Do you understand that if you represent

13  yourself, you are on your own and I cannot tell you or even

14  advise you how to conduct or try your case?

15    THE DEFENDANT:  Yes.

16    THE COURT:  Are you familiar with the Rules of --

17  Federal Rules of Evidence?

18    THE DEFENDANT:  Yes.

19    THE COURT:  You are.  How so?

20    THE DEFENDANT:  Not much, but I've been reading at

21  the law library.

22    THE COURT:  Okay.  Do you understand that the Rules

23  of Evidence govern what evidence may or may not be introduced

24  at trial; that is, representing yourself, you must abide by the

25  -- by those very technical rules and they will not be relaxed

Lafler Hearing - 09/20/2024

1   for your benefit.

2          Do you understand?

3          THE DEFENDANT:  No.

4          THE COURT:  That means I'm not going to stray from

5   the Rules of Evidence just because you're representing

6   yourself.

7          THE DEFENDANT:  Okay.

8          THE COURT:  Understand?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Are you familiar with the Federal Rules

11   of Criminal Procedure?

12          THE DEFENDANT:  No.

13          THE COURT:  Do you understand those rules govern the

14   way a criminal action is tried in federal court, that you are

15   bound by those rules and they will not be relaxed for your

16   benefit?

17          Do you understand?

18          THE DEFENDANT:  No.

19          THE COURT:  That means there's a group of rules

20   called the Rules of Criminal Procedure that -- and they

21   outline, guide how the case will be tried before the jury.  And

22   I'm going to follow those rules.  I'm not going to relax them

23   for you.

24          Do you understand?

25          THE DEFENDANT:  Yes, yes.

Lafler Hearing - 09/20/2024

```
 1              THE COURT:  Sir, in my opinion, a trained lawyer
 2    would defend you far better than you could defend yourself.  I
 3    think it is unwise of you to try to represent yourself.  You
 4    are not familiar with the law, you're not familiar with court
 5    procedures, you are not familiar with the Rules of Evidence.  I
 6    strongly urge you not to try to represent yourself.
 7              THE DEFENDANT:  Well, I -- I never came to this
 8    country ever in my life.  How would I get caught and charged
 9    for possession with intent?  That's what I've been telling my
10    lawyer.
11              THE COURT:  I'm telling you, my opinion, you should
12    have Mr. Steingold try the case for you.
13              THE DEFENDANT:  No, I know he don't have my best
14    interest.  That's why.
15              THE COURT:  I think you -- Mr. Steingold is --
16              THE DEFENDANT:  (Inaudible).
17              THE COURT:  When I'm speaking, you don't interrupt
18    me.
19              THE DEFENDANT:  Yeah, go ahead.  Sorry.
20              THE COURT:  Mr. Steingold is a top, top criminal
21    defense lawyer.  He's been a top criminal defense lawyer for
22    many, many, many years in federal and state court.
23              Is your decision entirely voluntary on your part?
24              THE DEFENDANT:  Yes.
25              THE COURT:  All right.  The Court finds the defendant
```

1  has knowingly and voluntarily waived the right to counsel, and

2  I will therefore permit the defendant to represent himself with

3  standby counsel.  And standby counsel, Mr. Steingold, will be

4  there to assist you during the course of the trial or replace

5  you if you wish him to or if I determine during the trial that

6  you can no longer be permitted to represent yourself.

7          All right.  Any other issues for today?

8          MR. STEINGOLD:  Yes, your Honor.

9          THE COURT:  Yes, sir.

10          MR. STEINGOLD:  My client had been at Milan before he

11  came into the court last time.  And he wanted to be returned to

12  Milan because that's where all of his paperwork is.

13          THE COURT:  Right.

14          MR. STEINGOLD:  But he was not and he hasn't had

15  access to his paperwork.

16          I'm not sure where you are.  Are you at Livingston?

17          THE DEFENDANT:  Yes.

18          MR. STEINGOLD:  So either we have to have his

19  paperwork transferred from Milan to Livingston or he needs to

20  get to Milan.  I will meet with him before trial and go over

21  everything I have, but he's entitled to his own notes and

22  records, especially in this situation where he's trying the

23  case himself.

24          THE COURT:  So, do me a favor.  Send an email to

25  Ms. McCoy.

```
 1                MR. STEINGOLD:  I will.

 2                THE COURT:  And that way, we all can follow up.

 3                MR. NORWOOD:  Question, your Honor.

 4           Although Mr. Steingold's going to be standby counsel,

 5    is it okay for the Government to send Mr. Steingold materials,

 6    exhibit lists, all of those things?

 7                THE COURT:  Of course.

 8                MR. NORWOOD:  Certainly.  Thank you.

 9                THE COURT:  Anything else for today?

10                MR. STEINGOLD:  One moment, please, your Honor.

11                (Inaudible conversation between Mr. Steingold and the

12                defendant at 3:07 p.m.)

13                MR. STEINGOLD:  Your Honor, my client wanted to know

14    if he had a new lawyer that was ready to try the case on

15    October 10th, would you allow it.  And I said I imagine he

16    would, but the attorney would have to come into court and tell

17    the Court that he's able --

18                THE COURT:  All hypothetical now.

19                MR. STEINGOLD:  Right.

20           I just wanted to let him know that if that happens,

21    the Court may allow it or not, but the attorney would have to

22    come to court and tell the judge, you, that he's going to be

23    ready on October 10th and not ask for any delays.

24           I think that's accurate.

25                THE COURT:  Yeah, there's no -- there's no other
```

Lafler Hearing - 09/20/2024

Page 24

1   attorney out there as far as I can tell.  And any attorney

2   would have to -- generally speaking, any attorney that would

3   come in, if I -- would have to be ready to try the case.  And

4   -- but I'll have to figure that out.

5           Obviously, right now, you're representing yourself

6   with Mr. Steingold as standby counsel.  That's where we're at.

7           And I can't deal -- I can't give a hard answer on

8   hypotheticals.

9           MR. STEINGOLD:  Thank you, your Honor.

10          THE COURT:  Okay.

11          THE CLERK:  All rise.

12          Court is in recess.

13          (PROCEEDINGS CONCLUDED AT 3:09 p.m.)

14                      * * * * *

15              **C E R T I F I C A T I O N**

16      I certify that the foregoing is a correct transcription

17  of the record of proceedings in the above-entitled matter.

18

19  **s/ April A. Kurtz, CSR-7347, RPR, FCRR        11/01/2024**
    April A. Kurtz, CSR-7347, RPR, FCRR            Date
20  Official Court Reporter

21

22

23

24

25